VOL. 101]        JANUARY TERM, 1917.                    57

State, ex rel. Marrow, v. City of Lincoln.

STATE, EX REL. WILLIAM P. MARROW, APPELLANT, V. CITY OF LINCOLN ET AL., APPELLEES.

FILED MARCH 16, 1917.    No. 19901.

1. **Statutes: CONSTRUCTION.** "In the construction of a statute, effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will." *Hagenbuck v. Reed*, 3 Neb. 17.

2. ——: ——: **TITLE.** In case of doubt as to the meaning of a statute, resort may be had to the title as an aid to discover the legislative intent, but by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act.

3. ——: ——. It is the duty of the court to discover, if possible, the legislative intent from the language of the act. It is not the court's duty, nor is it within its province, to read a meaning into a statute that is not warranted by the legislative language. In the legislative domain, and within constitutional bounds which it is bound to follow, the legislature is supreme.

4. ——: ——: **JUDICIAL NOTICE.** In the construction of a statute, courts take judicial notice of events and conditions generally known within their jurisdiction.

5. **Municipal Corporations: COMMISSION FORM OF GOVERNMENT: OFFICERS: ELECTION.** Section 5300, Rev. St. 1913, construed, and *held* to apply to Lincoln, a city of approximately 60,000 inhabitants.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed, with directions.*

*Fawcett & Mockett, L. C. Burr* and *J. A. De Bardeleben,* for appellant.

*C. Petrus Peterson, George W. Berge* and *Charles R. Wilke, contra.*

58          NEBRASKA REPORTS.          [VOL. 101

State, ex rel. Marrow, v. City of Lincoln.

DEAN, J.

In April, 1912, the city of Lincoln adopted and it is now governed by the commission form of government in pursuance of the provisions of the Banning law (Laws 1911, ch. 24) being sections 5288-5311, Rev. St. 1913. This is an application for a writ of mandamus brought in the district court for Lancaster county by William P. Marrow, relator and appellant, against the city of Lincoln, defendant and appellee, to compel the city to reinstate him in the fire department of the city as assistant fire chief, from which position he was peremptorily discharged by the mayor and city council. The writ was denied, and relator has brought the case here for review.

Relator's employment in the city's fire department commenced on July 2, 1911, at a monthly salary of $75, and at subsequent periods he was promoted to the positions of lieutenant and captain and assistant fire chief, in the latter position his monthly salary being $100. It was while in this position that he was discharged by order of the commission, a body consisting of five members, in pursuance of a resolution passed on December 31, 1915, by four members of the city council. The order of discharge briefly recites that the services of relator, as a "member of the fire department, be and the same are hereby dispensed with." The resolution by its terms became effective immediately on its passage. No charges were filed by the council nor by any person against relator, and it follows that he had no hearing before the council. The testimony introduced by relator in the district court disclosed that he was a capable and efficient officer in the several capacities in which he had served in the city's fire department. The city did not offer any testimony.

Relator argues that in view of the premises the city council was without lawful authority to dismiss him. Defendant contends that it was justified in discharging relator peremptorily and that in the premises its acts are within the law. To determine the controversy between the parties it becomes necessary to construe so much of the Banning

law and the firemen's pension act as apply to the facts in the case before us. The title to the Banning act and section 13 thereof follow:

" An act for the government of all cities having, according to the last preceding state or national census, five thousand or more population, and to enable such cities to adopt the provisions of this act called the 'commission plan of city government.' "

Section 13 (Rev. St. 1913; sec. 5300) : "The council shall at its first meeting, or just as soon as possible thereafter, elect as many of the city officers provided for by the then existing laws or ordinances governing any such city as may, in the judgment of the council, be essential and necessary to the economical but efficient and proper conducting of the government of the city, and shall at the same time fix the salaries of the officers so elected either by providing that such salaries shall remain the same as fixed by the then existing laws or ordinances for such officers or may then raise or lower the existing salaries of any such officers, and the council may modify the powers or duties of any such officers, as provided by then existing laws or ordinances, or may completely define and fix such powers or duties anew. Any such officers or any assistant or employee elected or appointed by the council may be removed by the council at any time: Provided, however, in cities of the metropolitan class no member or officer of the police department, or department of police, sanitation and public safety or of the fire department or department of fire protection and water supply, shall be discharged for political reasons, nor shall a person be employed or taken into either of such departments for political reasons. Before any such officer or employee can be discharged charges must be filed against him before the council and a hearing had thereon, and an opportunity given such officer or employee to defend against such charges, but this provision shall not be construed to prevent peremptory suspension of such member by the council in case of misconduct or neglect of duty or disobedience of orders. Whenever any such

State, ex rel. Marrow, v. City of Lincoln.

suspension is made, charges shall be at once filed by the council with the officer having charge of the records of the council and a trial had thereon at a second meeting of the council after such charges are filed. For the purpose of hearing such charges the council shall have power to enforce attendance of witnesses, the production of books and papers, and to administer oaths to witnesses in the same manner and with like effect and under the same penalty, as in the case of magistrates exercising civil and criminal jurisdiction under the statutes of the state of Nebraska."

The modern writers and authorities generally hold that, in case of doubt as to the meaning of a statute, resort may be had to the title of the act as an aid to discover the legislative intent, but of course by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act. And this is particularly the case in a state where the Constitution requires the subject of the act to be expressed in the title. Black, Interpretation of Laws (2d ed.) sec. 83; 2 Sutherland (Lewis') Statutory Construction (2d ed.) sec. 339. In the present case it will be noted that the title refers to "all cities having * * * five thousand or more population."

Defendant contends both in the oral argument and in its brief that cities of the class of Lincoln have an unrestricted right to remove at any time any employee without the formality of preferring or filing charges and without such employee being given an opportunity to be heard in his defense. In its brief it prints in full section 5300 above referred to, and in italics these words, "Any such officers or any assistant or employee elected or appointed by the council may be removed by the council at any time," and argues that "the power of removal is by that section (5300) given to the city of Lincoln unrestricted, to be exercised in their discretion and at their pleasure, and any officer or employee so appointed holds his office in their discretion and at their pleasure."

To consistently maintain its argument the city must also contend that the words "such officer or employee" in

that part of the section following the word "provided" relate only to the officers named in the proviso. If "in cities of the metropolitan class no member or officer of the  *  *  * fire department  *  *  *  shall be discharged for political reasons," why the necessity of having such "member or officer" of a city of the metropolitan class safeguarded against a discharge "for political reasons" when he cannot at all be discharged for those reasons?  We hold that the proviso clause of the section under consideration begins with the words, "Provided, however," and ends with the words, "departments for political reasons."  So read, the proviso is complete in itself, and construed in the light of the other parts of the act and other statutes it was so intended by the legislature.  Any other construction of that statute is too refined for practical use.  We cannot give our assent to the defendant's argument, nor to the judgment pronounced by the learned trial court.

Mr. Justice Story in *Minis v. United States,* 15 Pet. (U. S.) *423, speaking for the supreme court of the United States, says: "The office of the proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of its extending to cases not intended by the legislature to be brought within its purview."

A rule of statutory construction is admirably stated in the early case of *Hagenbuck v. Reed,* 3 Neb. 17, cited in syllabus 1 herein:  "In the construction of a statute, *  *  *  no sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will."

Applying the foregoing rule to the present case, we find the proviso is so plain that it is not susceptible of strained construction.  It provides on the point involved that "no member or officer of" the several departments of a metropolitan city that are embraced within its terms "shall be

discharged for political reasons." The proviso does not use the word "employee." That word is first used in section 5300, immediately preceding the proviso in this connection: "Any such officers or any assistant or employee elected or appointed by the council may be removed by the council at any time." The next use of the word "employee" is found in the language immediately following the proviso, where it is used twice: "Before any such officer or employee can be discharged charges must be filed against him before the council and a hearing had thereon, and an opportunity given such officer or employee to defend against such charges." Clearly the designation "officer" and "employee," as used in the language following the proviso, relates back to the subject embraced in the language that precedes the proviso. In view of the universal rule that the proviso is to be strictly construed, it would certainly be a strained construction to hold that all of section 5300 that follows the word "provided" is a part of the proviso, as the city seems to contend. To hold that all the remainder of the chapter is a part of the proviso would be a construction only a little less liberal.

That it is the duty of the court to discover, if possible, the legislative intent from the language of the act is elementary. It is not the court's duty, nor is it within its province, to read a meaning into a statute that is not warranted by the legislative language. In the legislative domain, and within constitutional bounds which it is bound to follow, the legislature is supreme.

In the construction of a statute, courts take judicial notice of events generally known within their jurisdiction. In the present case the court may properly take judicial notice of the comparative size of the cities within its jurisdiction, and the reasons urged for and against the enactment of laws relating to cities generally. With this in mind, we can discover no reason why the legislature should have intended to grant to a member of a fire department in a city of 100,000 inhabitants and upwards, a right to be faced by his accusers and to be heard in his own defense,

and in the same act deny the right to a member of the fire department in a city of approximately 60,000 inhabitants. In the construction of the statute before us, the court will not impute to the legislature an intent to be unreasonable, nor to commit itself to anything that is so manifestly un-American. It is always presumed the legislature intends to do the reasonable thing.

In the interpretation of a legislative enactment, it is the duty of the court to apply to the act generally accepted rules of statutory construction, to the end that effect may be given to the will of the legislature. The law-making body too is bound by such rules. But, in any event, if a law is objectionable application should be made to the legislature for its repeal or modification. The right to be heard, the right of any citizen in any walk of life to have his day in court, should not be denied him by placing a strained and technical construction upon a statute, and if there is any doubt about the meaning of the legislative language in this respect it should be resolved in favor of a hearing, rather than against a hearing. Such interpretation is more in harmony with the genius of our institutions.

In addition to the foregoing defense, the relator argues at some length that, by virtue of his employment in the fire department, he thereby had a vested right in the fireman's pension fund in pursuance of sections 2516-2519, Rev. St. 1913, which, in brief, provide that, after a service of 21 years, such employees shall be entitled to the pension named in the act. It is conceivable that an arbitrary discharge of a fireman might be brought about without a hearing, for the sole purpose of enabling the city by indirect means to evade the payment of a pension. But, in view of our holding that the relator is entitled to a hearing in pursuance of section 5300, it does not appear to be necessary to discuss the pension feature at greater length.

Both of the parties too gave considerable attention in their respective briefs to questions of procedure. But on the final hearing technical rules relating to practice were for the most part abandoned, for which both parties are to

be commended, thus avoiding the necessity on the part of the court of discussing anything save the merits.

The judgment of the district court is reversed, and the cause remanded, with instructions to enter a judgment in accordance with the views expressed in this opinion.

REVERSED.

CORNISH, J., not sitting.

SEDGWICK, J., concurring.

When this case was being heard before the district court, the judge suggested to the attorney for the city that he supposed "that you would introduce testimony as to the reason or motive for the discharge of plaintiff by the city," and the city attorney answered: "We do not intend to introduce any testimony. It is our desire to have a square decision of the law in this case of the right and power of the city to discharge the plaintiff without notice or opportunity to be heard, and without hearing or charges being filed." Whereupon counsel for the relator said: "With that statement the plaintiff rests." No formal return was made to the alternative writ, but the city filed an answer to the application for the writ, which I think the court may properly consider in the nature of a general demurrer and determine the precise and only question so presented.

The question is whether section 13 of the so-called Banning act confers upon the city council of Lincoln the power to discharge a member of the fire department arbitrarily without stating any cause therefor, and without a hearing. Of course section 13 is to be construed in the light of the other sections of the act and in the light of other provisions of the statute which are still in force. The precise question is whether the whole of section 13 after the word "provided" is to be construed to apply only to cities of the metropolitan class, or whether that part of the proviso which provides that charges must be filed against such officer before he can be discharged; and regulates the procedure thereon, applies to all cities that may become governed by the act. The legislation from which this question is to be

determined is not as specific and clear as might be desired. The clause that "no member or officer of the police or fire department shall be discharged for political reasons, nor shall a person be employed or taken into either of such departments for political reasons," is taken from the act of 1905 (Rev. St. 1913, sec. 4200) which applies only to cities of the metropolitan class, and in that act those words were followed with the provision that, "before a policeman or fireman can be discharged, charges must be filed against him," etc. In section 13, which we are considering, the expression is "before *any such officer or employee can be discharged.*" The fact that the provision for filing charges and having a hearing before removal is borrowed from the statute covering metropolitan cities, and is not found in any of the statutes covering cities of other classes, indicates that the legislative intent was that this provision should apply only to cities of the metropolitan class as contended by the city. In cities of the first class, having over 40,000 and less than 100,000 inhabitants, there is a provision that "any such officers so appointed may be removed at any time by a vote of three-fourths of all the members of the council." Rev. St. 1913, sec. 4483. And in cities from 25,000 to 40,000 inhabitants it is provided that the mayor "shall have power in like manner to remove from office, by and with the consent of a like majority of the council, any person or persons by him appointed thereto." Section 4654. These facts furnish some indication that in these two classes of cities it was not intended by section 13 of the Banning act to require that charges should be filed and a hearing had before appointed officers were removed. If, however, we examine the provisions of the statutes governing the cities of the respective classes, we find also indications that the legislature intended that this provision in regard to formal charges and hearing should also apply to other cities than of the metropolitan class. In cities of over 5,000 and less than 25,000 inhabitants it is provided that police officers "may be removed by the mayor at pleasure;" that other appointive officers may be removed *for cause.* Section 4874. This

101 Neb.—5

66 NEBRASKA REPORTS. [VOL. 101

State, ex rel. Marrow, v. City of Lincoln.

would of course require a statement of the cause and a hearing thereon. We see therefore that the internal evidence of the act itself, in the light of existing statutes upon the same general subject now in force, is conflicting and somewhat uncertain. To determine the intention of the legislature it is therefore very important to consider the nature of the office from which the relator was discharged, and the fact that by his discharge he is deprived of the benefit of the firemen's pension law. If the city can discharge him without cause and without stating or having any reason therefor, it can be done of course at one time as well as another; and, when he has served for nearly the length of time to entitle him to a pension upon withdrawing from the service, he may be arbitrarily discharged and be deprived of his expected pension. It is argued that a fireman has no vested right in a pension under the statute, but whether or not he has a vested right, that is, a contract right, of which he cannot be deprived without compensation, it must be conceded that a competent and efficient fireman who has conscientiously and strictly performed his duties for a term of years has an interest in his prospective pension by which he may support his family and himself in his declining years. "The pension forms an inducement to the individual to enter and remain in the service of the fire department, and the pension in a sense is part of the compensation paid for those services. * * * The state is under the same moral obligation to its injured firemen that it owes to the citizen who is injured while assisting in the capture of a criminal. The legislature may transform that duty into a legal obligation, and impose it upon the municipalities by statutes general in their application to the class of cities affected thereby, and, so long as the law is not repealed, that obligation will be enforced by the courts." *State v. Love,* 89 Neb. 149, 156. We cannot consider that the legislature would authorize the city authorities to deprive him of this right without cause, and without reason, and without a hearing, unless it has so declared plainly and in unequivocal language. A similar question was presented to the supreme court of Michigan

(*Pulford v. Fire Department,* 31 Mich. 458), and it was there decided: "There can be no power to impose forfeitures unless granted by clear legislative enactment.  *  *  * It is abhorent to all reason to allow a forfeiture to be enforced on an alleged default without notice and a hearing, or an opportunity to be heard." And in the opinion it is said: "Summary means and methods unknown to the common law must be authorized by express authority." In *State v. Love,* 89 Neb. 149, the opinion says that in *Gillespie v. City of Lincoln,* 35 Neb. 34, it is said that firemen are all "public or state officers vested with such powers as the statute confers, and that the duties they perform do not relate to the corporate functions of the municipality." If we conclude that the law is that appointed officers may ordinarily be removed by the appointing power, still when such removal destroys a very valuable right of the officer removed, expressly given him by statute, if we should say that the legislature might authorize such removal, it will not be considered that the legislature has done so, unless it is by the most clear and explicit terms.

It may be true, as contended by the city, that if we look only to the language of the Banning act, under which the city was being administered, the city might have authority to act upon its arbitrary will in employing or discharging its employees. But this other provision of the statute applying to the city of Lincoln gives to firemen who have served the city for 21 years a right to a pension. In considering the rights of the relator, it seems that these two acts must be construed together. If the pension law is to be effectual for the purposes intended, it must be that an employee cannot be discharged on purpose to save the city from paying the pension provided for. Nor could the city adopt any method of employing or discharging such employees which would tend to defeat the purposes of the pension law. On the other hand, in legal contemplation, the employee has no vested or contractual right in the anticipated pension until its contingency has arisen. This, however, is an indisputable fact that employees will enter the service and remain in

68* NEBRASKA REPORTS. [VOL. 101

State, ex rel. Marrow, v. City of Lincoln.

it with such a promise held out to them, when otherwise they would not. This mere expectancy of theirs is intended by the pension law itself for better and longer-continued service. In regarding the pension law, we must regard that. The question we have to consider is what should be the rule as to discharging employees so as not to do violence to either of the laws above mentioned. If the city council can discharge such employees without giving a reason therefor, then it might do so arbitrarily and with the intention of defeating his pension, leaving him somewhat helpless as to the proof of the real nature of his discharge, and thereby creating a situation which would render the pension law inoperative for the purposes for which it was intended.

On the trial of this case, the respondent declined to offer any testimony or give any reasons for the discharge of the employee. The trial court placed the burden of proof upon the employee to show that he was discharged for the purpose of defeating him of a pension, or under a system of discharging employees which would render inoperative the purposes of the pension law. In this I think the trial court erred. I think the better rule would be, if the spirit and intention of the Banning act and the pension law are both to be carried out as near as may be, that, before such an employee can be discharged, the substantial reason therefor should be stated, and that, if the reason given therefor is untrue, or if the reason given is one which, if acted upon, would go contrary to the purposes of the pension law, as designed, then such a discharge should not be permitted. Mere arbitrary or capricious discharge would operate to defeat the pension law. The burden of showing the reason for the discharge should be upon the city council. By this I do not mean that the city is powerless to discharge such employee for any reason that appears good to it, acting as reasonable men. It has full power to do whatever, in the exercise of its discretion, is reasonably necessary for the betterment of the service. The trial court heard evidence of relator apparently upon the theory that it was proper and necessary that the relator should show that his discharge

State, ex rel. Marrow, v. City of Lincoln.

was for the purpose of depriving him of his pension right. Of course upon the same theory the relator would sustain his case by proving that he was discharged for any unlawful or insufficient reason. This theory virtually concedes the relator's claim that he could only be discharged for cause. The most natural and regular way to prove that he was not discharged for any insufficient or improper cause would be to show that he was discharged for sufficient cause. And this burden should be placed upon the authorities who discharged him.

While the general question in this case is not free from serious doubt, I am inclined to agree with the opinion that the judgment of the district court should be reversed.

ROSE, J., dissenting.

The relator, assistant chief of the fire department of Lincoln, was discharged by the city council without notice or hearing. Later, in the district court for Lancaster county, he applied for a peremptory writ of mandamus to compel respondents, members of the city council, to reinstate him. The writ was denied, and he has appealed. In reviewing the proceedings of the trial court a majority of my associates hold that respondents had no authority to remove relator summarily. I dissent. In my opinion the power of the council to remove relator in the manner indicated is clearly conferred by the Lincoln charter, which provides that any "officers or any assistant or employee elected or appointed by the council may be removed by the council at any time." Rev. St. 1913, sec. 5300. Lincoln is under the commission form of government, and the members of the city council justify the dismissal of relator under that part of the charter declaring: "Any such officers or any assistant or employee elected or appointed by the council may be removed by the council at any time." Rev. St. 1913, sec. 5300.

In my judgment the opinion of the majority nullifies this plain expression of the legislative will by giving an unwarranted import to the language following the provision on

70 NEBRASKA REPORTS. [VOL. 101

State, ex rel. Marrow, v. City of Lincoln.

the subject of removals in Lincoln and other cities under the commission form of government. That language is:

*"Provided, however,* in cities of the metropolitan class no *member or officer* of the police department, or department of.police, sanitation and public safety or of the fire department or department of fire protection and water supply, shall be discharged for political reasons, nor shall a person be employed or taken into either of such departments for political reasons. Before any *such officer or employee* can be discharged charges must be filed against him before the council and a hearing had thereon, and an opportunity given *such officer or employee* to defend against such charges, but this provision shall not be construed to prevent peremptory suspension of *such member* by the council in case of misconduct or neglect of duty or disobedience of orders. Whenever any such suspension is made, charges shall be at once filed by the council with the officer having charge of the records of the council and a trial had thereon at a second meeting of the council after such charges are filed. For the purpose of hearing such charges the council shall have power to enforce attendance of witnesses, the production of books and papers, and to administer oaths to witnesses in the same manner and with like effect and under the same penalty, as in the case of magistrates exercising civil and criminal jurisdiction under the statutes of the state of Nebraska." Rev. St. 1913, sec. 5300.

This is all proviso. It applies alone to Omaha, a city of the metropolitan class. The majority have fallen into grave errors by assuming that the proviso ends with its introductory sentence and by interpolating what follows into the preceding sentence authorizing the city council to remove officers and employees "at any time." Lincoln is not a city of the metropolitan class, and the sentence commencing with the word "provided" has no application to respondents. The second sentence in the proviso reads:

"Before any such officer or employee can be discharged charges must be filed against him before the council and a hearing had thereon, and an opportunity given such officer

or employee to defend against such charges, but this provi-
sion shall not be construed to prevent peremptory suspen-
sion of such member by the council in case of misconduct
or neglect of duty or disobedience of orders."

In the majority opinion it is held that the words "any
such officer or employee" refer to "officers or any assistant
or employee" in the sentence preceding the word "provided,"
and not to "member or officer" in the provision relating to
the fire and police departments of Omaha.   The reason
given by the majority for this construction is that, in the
sentence commencing with "provided," the word "em-
ployee" was not used, and that therefore the words "any
such officer or employee" refer to the sentence preceding
the proviso.   The second sentence in the proviso shows,
however, that "employee" was used in the same sense as
"member."   After providing that an opportunity must be
"given such officer or employee to defend," the statute de-
clares that "this provision shall not be construed to pre-
vent peremptory suspension of such member by the council
in case of misconduct or neglect of duty or disobedience of
orders."   The provision that, "before any *such* officer or
employee can be discharged," charges must be filed refers
to a "member or officer" of the fire or police department of
Omaha.   "Such" is "descriptive, and is a relative word,"
and "must be referred to the last antecedent, unless the
meaning of the sentence would thereby be impaired." *Sum-
merman v. Knowles,* 33 N. J. Law, 202, 205.   See, also,
*Tuggle v. Enterprise Lumber Co.,* 123 Ga. 480; *Common-
wealth v. Burrell,* 7 Barr. (Pa.) 34, 37; *Benoit v. New
York C. & H. R. R. Co.,* 87 N. Y. Supp. 951.

In Lincoln and Omaha the difference in the power to re-
move firemen and policemen was not created by the act un-
der consideration, but existed for a number of years under
previous charters.   The city council of Lincoln was au-
thorized to remove such officers without notice or hearing.
Rev. St. 1913, secs. 4483, 4489.   In Omaha, however, their
removal for political reasons was prohibited.   No member
of the fire or police department of Omaha could be dis-

72          NEBRASKA REPORTS.          [VOL. 101

State, ex rel. Marrow, v. City of Lincoln.

charged without a hearing. Rev. St. 1913, sec. 4200. The intention to retain this feature in the charter of Omaha under the commission form of government is obvious from a reading of the act. Rev. St. 1913, sec. 5300.

The history of the act is of the same import. Section 5300 of the Revised Statutes is section 13 of the original act. Laws 1911, ch. 24. When the bill was introduced, section 13 ended with the provision that "any such officers or any assistant or employee elected or appointed by the council may be removed by the council at any time." Upon report of the committee of the whole, section 13 was amended by inserting after the word "time" all that part of the section as it now stands, commencing with "provided." Senate Journal, 1911, p. 644. The addition to the original section of the bill contains the substance, and in many respects the wording, of that part of the Omaha charter prohibiting the removal of firemen and policemen without a hearing. Rev. St. 1913, secs. 4200, 5300. It is clear that the legislature did not intend to restrict the power of the council of other cities to remove "at any time" officers, assistants and employees elected or appointed by it.

According to the majority opinion, as I understand it, the right to a hearing is not limited to firemen and policemen in Omaha as stated in the plain language of the lawmakers, but extends to every officer, assistant and employee selected by the council of a city under the commission form of government. The effect of the decision is to take from the council of Lincoln, after summary removal has been authorized in direct statutory terms, the power to remove such officers and employees without a hearing. As I view the opinion, it includes an exercise of power committed by the people to the legislature alone.

LETTON, J., joins in this dissent.