VICTOR N. HANSEN, APPELLANT, V. DAKOTA COUNTY ET AL., APPELLANTS: GEORGE W. LEAMER, INTERVENER, APPELLEE.

283 N. W. 217

FILED JANUARY 6, 1939.   No. 30451.

*Clarence T. Spier, L. J. Te Poel, Kenneth S. Finlayson, Alexander McKie, Jr.,* and *Malcolm R. Smith,* for appellants.

*George W. Leamer, W. V. Steuteville* and *Joseph E. Marsh, contra.*

*Fred H. Free, amicus curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an action for a declaratory judgment to determine whether the county commissioners of Dakota county are authorized to purchase an existing interstate bridge which spans the Missouri river between Sioux City, Iowa, and South Sioux City, Nebraska, under and by virtue of chapter 87, Laws 1935 (Comp. St. Supp. 1937, secs. 39-2101 to 39-2112). The trial court held that the defendant county was without authority to purchase the bridge, and all defendants appeal to this court.

There is only one question of substantive law involved in this case and that is: Does the county bridge act of 1935 (Laws 1935, ch. 87) authorize a border county merely to *build* a bridge across a boundary stream or does it authorize such county to either *build* a bridge or *purchase* one already built? In view of the fact that a determination of this question is decisive of the case, we will not discuss other alleged errors assigned in the briefs.

Section 1 of the act provides in part as follows: "Any

county in the state of Nebraska may build or construct or aid in the construction or complete construction of any highway, wagon, vehicle or automobile bridge within the state of Nebraska and any adjoining state across any river, navigable or nonnavigable stream, forming a boundary line between any county within the state of Nebraska and any other state of the United States."

Section 2 provides in part as follows: "Any county in the state of Nebraska may issue revenue bonds to construct or to aid in the construction, or complete the construction of any highway, wagon, vehicle or automobile bridge within the state of Nebraska and any adjoining state across any river, navigable or nonnavigable stream, forming a boundary line between any county within the state of Nebraska and any other state of the United States."

Section 5 states in part: "If any such county, prior to the passage of this act, has acquired, purchased, or received an assignment by gift or otherwise, any existing highway, wagon, vehicle or automobile bridge or viaduct * * * same shall be and is hereby declared legal and valid and the property of the county and of the same force and effect as if said property had been heretofore directly acquired by the county."

Section 7 also states in part: "No election and no vote of electors shall be required upon the question of acquiring or constructing any bridges or issuing revenue bonds as authorized by this act, for the acquisition or construction of any bridge, if the governing body of the county shall determine by a vote of a majority of its members to dispense with such election or vote of electors as to such question."

It will readily be observed that section 1 of the act states that a county "may build or construct or aid in the construction or complete construction" of a bridge and that nothing is said with reference to the purchase of a bridge. It will also be observed that section 2 provides for the issuance of "revenue bonds to construct or to aid in the construction, or complete the construction" of a bridge, and,

as in the previous section, nothing is stated with reference to the purchase of a bridge. In section 5 the statement is made that if a county "has acquired, purchased, or received an assignment by gift or otherwise," any existing bridge, the same is declared valid. This being a validating act of past transactions, it might well be said that it does not of itself empower a county to acquire, purchase or receive by assignment, a bridge in the future. The claimed authorization to purchase is found in section 7 wherein it is said: "No election and no vote of electors shall be required upon the question of acquiring or constructing any bridges or issuing revenue bonds as authorized by this act, for the acquisition or construction of any bridge." The issue to be determined resolves itself into a question whether this provision of section 7 of the act authorizes the purchase of the bridge involved in this case.

It is a fundamental rule of statutory construction that effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will. It is the duty of the court to discover, if possible, the legislative intent from the statute itself. It must be borne in mind that, in the legislative field, the legislature is supreme so long as it keeps within constitutional limits, and it is not the province of the court to read a meaning into a statute that the language used does not warrant. *State v. City of Lincoln*, 101 Neb. 57, 162 N. W. 138; *McCann v. McLennan*, 2 Neb. 286; *State v. Drexel*, 75 Neb. 614, 106 N. W. 791; *King of Trails Bridge Co. v. Plattsmouth Auto & Wagon Bridge Co.*, 114 Neb. 734, 209 N. W. 497; *State v. Thomas*, 127 Neb. 891, 257 N. W. 265.

If we give effect to the words used in section 7 of the act, in the sense in which they are ordinarily used, we must necessarily hold that it was the legislative intent that counties coming under the act might purchase as well as

build an interstate bridge. Unless the words "acquiring and constructing" and "acquisition or construction" contained in section 7 are held to be meaningless or superfluous, we can arrive at no other logical conclusion. Following the rules of statutory construction hereinbefore stated by giving the usual and ordinary meaning to every word, clause and sentence with a view of arriving at the legislative intent, we feel that the only conclusion that can be logically reached is that the legislature intended that counties coming within the act were to be empowered to purchase as well as construct, complete or aid in the construction of an interstate bridge. It might be pertinent to inquire, unless such authority was intended, how a county would become possessed of a partly completed bridge for the purpose of completing it except by purchase. Assuming, for the sake of argument, that the language used in section 7, when considered with other language in the act, results in ambiguity and uncertainty and casts doubt as to what the legislature intended, we may then resort to an examination of the title to the act as an aid to construction. In *State v. City of Lincoln, supra,* we said: "In case of doubt as to the meaning of a statute, resort may be had to the title as an aid to discover the legislative intent, but by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act."

The title to the act under consideration provides in part as follows: "An act relating to bridges; to define the terms 'county' or 'counties' wherever used in this act; to authorize counties in the state of Nebraska to build and construct a bridge or bridges; * * * to authorize any county to acquire by purchase, gift or otherwise any existing bridge, viaduct or right-of-way or approaches or appurtenances thereto and to validate any acquisition heretofore made of any thereof; to acquire all necessary real estate and personal property; to acquire real estate and personal property located in an adjoining state." Laws 1935, ch. 87.

Applying the rule announced to the title of the act before

us, we find the legislative intent expressly stated in the words "to authorize any county to acquire by purchase, gift or otherwise any existing bridge." By giving the entire statute the meaning that the legislature intended, we are driven to the conclusion that the act authorizes the purchase of interstate bridges by counties that fall within its provisions.

For the reasons stated, the judgment of the trial court is
REVERSED.