

Swenson, Viren & Turner, (Robert W. Turner) Omaha, Neb., for plaintiff.

Kennedy, Holland DeLacy & Svoboda, (Yale Holland) Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This is an action to recover certain undercharges arising by reason of the fact that the plaintiff was not paid rates consonant with those promulgated by the Nebraska State Railway Commission. The Commission derives its authority to regulate such rates from the following legislative provision: "The State Railway Commission is vested with power and authority to, and it shall be its duty to make investigations, hold hearings, and prescribe reasonable rates and charges for the transportation of passengers and property by common carrier, which rates and charges shall become effective not later than sixty days after such prescription." Sec. 75-241, R.S.1943.

When the Commission has fixed the rates it sends a copy of the rate schedule to the carrier and the carrier is required to publish its own rates. Sec. 75-303, R.S.1943. These rates may be published jointly by the carriers if they so desire. The rates in question were published in the Official Motor Vehicle Tariff, No. 3, as amended, which was issued by the State Railway Commission May 22, 1945. And it is ably contended by counsel for the plaintiff that these rates then became law by virtue of the peculiar nature of the Nebraska Constitutional and statutory provisions in respect thereto.

The sole objection which the defendant makes concerning the validity of these rates is that the Commission in issuing the rates has not complied with the Nebraska Rules for Administrative Agencies, which, among other things, provide:

"Each agency shall file forthwith in the office of the Secretary of State a certified copy of the rules in force and effect in such agency on August 10, 1945. A certified copy of any rule adopted after August 10, 1945 shall likewise be so filed. * * *" Sec. 84-902, R.S.1949 Supp.

"No rule required under this act to be filed with the Secretary of State shall be valid as against any person until the certified copy of the rule shall have been so

filed; * * *." Sec. 84-906, R.S.1949 Supp.

The palpable issue is whether "rates" are "rules" within the meaning of the above legislative enactment. It has been stipulated by the parties that the rates in question have not been filed with the Secretary of State and consequently if "rates" are "rules" then the petition should be dismissed at this point because the defective rates could not be a valid basis for the claim.

A "rule" has been defined for the purposes of these sections as follows: "(2) 'rule' means the written statement of any rule, regulation, standard or policy of general application issued by an agency, including the amendment or repeal thereof, and designed to implement, interpret or make specific the law enforced or administered by it, or governing its organization or procedure, but not including regulations concerning the internal management of the agency not affecting private rights or interests; Provided, that * * * every rule which shall prescribe a penalty shall be presumed to have general applicability or to affect private rights and interests." Sec. 84-901, R.S.1949 Supp.

We are here faced with the most difficult of all statutory construction problems. The court is asked to put meaning into this interpretative provision of the legislative enactment, or more precisely, the court is asked to define the definition.

The fundamental rule of construction is that the legislative intent should be ascertained, if possible. Hansen v. Dakota County, 135 Neb. 582, 283 N.W. 217. But this is not an easy task and a thorough search through the Nebraska Legislative Journals seems to indicate that the legislature never considered the problem with which we are now faced. Laws 1945, c. 255, sec. 1, p. 795, L.B. 138, may be traced in the 1945 Nebraska Legislative Journal at pages 108, 110, 130, 274, 306, 316, 356, 401, 478, 517, 524, 533, 542 and 556; Laws 1947, c. 350, sec. 1, p. 1097, L.B. 399, may be traced in the 1947 Nebraska Legislative Journal at pages 278, 320, 564, 796, 1332, 1391, 1409, 1563, 1614, 1673, 1685, 1709 and 1790. Some information can be gathered from the Report of the Committee on Administrative Agencies of the Nebraska State Bar Association, 22 Neb.L.R., No. 4, p. 29, 1943. This committee made a report on the situation sought to be remedied by the statute in question before any action was taken by the legislature. At page 33, the committee makes this statement: "Perhaps the most striking illustration of the substantive *rule* making power in Nebraska is the authority of the Railway Commission under Article IV, Section 20, of the Constitution, in the absence of legislation to regulate the *rates* and service of common carriers." (Emphasis added)

This would certainly indicate that the committee felt that "rates" are "rules" within the usual meaning of the latter term. And this seems to be a proper and ordinary interpretation of the word "rule". Cf. Atlantic Log & Export Co. v. Central of Georgia Railway Co., 1930, 171 Ga. 175, 155 S.E. 525; Parmelee v. Florida & Western Railroad Co., 78 Ga. 239, 2 S.E. 686. Note the definition of the word "rule" and "rule making" in the Federal Administrative Procedure Act, 5 U.S.C.A. § 1001.

To use the express terms of the Nebraska Legislature a "rule" is a "written statement of any * * * standard * * * designed to * * * make specific the law enforced or administered * * *." This is such a clear description of the meaning, purpose and function of a rate schedule that the court is reluctant to admit that there is any question of statutory construction. It is fundamental that a statute clear and unambiguous on its face need not and can not be interpreted by a court. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann. Cas.1917B, 1168.

Counsel refers us to an Opinion of the Attorney General of the state of Nebraska pointing out that "rates" should not be considered "rules" within the meaning of the statute. The opinion reads in part as follows: "The legislature has also pro-

vided a procedure for establishing schedules and classifications of rates (Sec. 75-302, R.S.1943) and requires the common carrier to print and keep available for public inspection the rates and fares under which it operates (Sec. 75-303, 75-304, R.S. 1934). While in a sense *such tariff schedules might be said to be rules of general application,* we do not believe they come within the definition as used in the act. Furthermore, there would appear to be nothing gained in the way of informing the public of these rates by filing copies with the Secretary of State in view of the statutory requirements that they be published by the carriers themselves; and it is inconceivable to us that the legislature should intend that all such tariff regulations should be annulled and abrogated if not filed with the Secretary of State." Appendix of plaintiff's brief quoting verbatim from the 28th Annual Report of the Nebraska State Railway Commission (1945), p. 11.

This court is not moved by the opinion for two reasons. First, "rates" are rules of general application because they affect all who wish to ship between any given points. It should be noted in this respect that the act specifically provides that every rule which shall prescribe a penalty shall be presumed to have general applicability, and all rate overcharges are, by statute, subject to a penalty of from $1,000 to $5,000. Sec. 75-310, R.S.1943. Secondly, if the Legislature intended to nullify all other "rules" if not filed with the Secretary of State, there is no reason to presume a different intention with regard to "rates".

Nor is there any basis upon which I could conclude that interpreting the word "rules" to include "rates" is an unreasonable, absurd or unconstitutional construction in this case.

Following the rationale set forth above, the court feels that the rates in question are invalid and the plaintiff's cause of action should be dismissed.

An order will be entered accordingly.

United States District Court
W. D. Missouri, W. D.