COVERT v. HASTINGS MFG. CO.
(three cases).

Nos. 3, 4, 5.

District Court, D. Nebraska,
McCook Division.

March 25, 1942.

Cordeal, Colfer & Russell, of McCook, Neb., and Carl H. Swanson, of Culbertson, Neb., for plaintiff.

Butler, James & McCarl, of McCook, Neb., for defendant.

DELEHANT, District Judge.

In each of the foregoing cases, the issue herein considered is identically involved. Therefore, a duplicate original of the memorandum will be placed by the clerk among the files of each of the actions, in which identical orders have heretofore been made by the court. And for the sake of convenience and brevity, the court's further discussion will proceed in language implying the pendency of a single case with one plaintiff and one defendant, though the court remains mindful that it is responsive to one issue in the cases between separate plaintiffs and a single defendant.

The action is in this court on removal from the District Court of Red Willow County, Nebraska. There, plaintiff filed a petition alleging, inter alia, sundry matters of qualification and inducement, an automobile collision between two cars, one driven and owned by Floyd M. Covert, a plaintiff, and the other driven and owned by one Horace L. Francis, an employee of the defendant, a Michigan corporation, manufacturing and selling certain motor vehicle accessories, engaged in business in Nebraska, the operation, at the time of the collision, by Francis of his car in the course of his employment by the defendant, specific acts of negligence by Francis as the proximate cause of the collision and consequent damage. The petition alleges specifically that Francis, at the time of the collision, was a traveling salesman and made contracts, credit investigations of customers and adjustments respecting defective merchandise, all in behalf of the defendant which required Francis to travel an assigned territory by automobile, owned by Francis and by him purchased at the request and with the knowledge of the defendant for the purpose of covering his territory in behalf of the defendant as its agent; and that the defendant paid Francis a weekly salary and a commission on sales, and an arbitrary allowance of $7 per week for the use of his automobile, plus the cost of the gasoline and oil used in its operation.

In the state court, process was first issued and served on the defendant by delivery to the State Auditor of Nebraska, under the provisions of Sec. 24-1201, C.S.Neb. 1929. Seasonably after removal, the defendant filed in this court a motion to quash the process with a supporting showing. After appropriate and exhaustive presentation, and on April 19, 1941, that motion was overruled by Honorable Thomas C. Munger, then judge of this court. That ruling is not presently involved, although in an answer filed May 19, 1941, the defendant appropriately preserves the issue of the validity of service, both in respect of the process sustained by Judge Munger, and as to that to which this memorandum is responsive.

But, in addition to the initial process, and for the obvious purpose of "mending his hold", the plaintiff, through praecipe, caused a further and alias summons to be issued out of this court on March 10, 1941, and served on the defendant by delivery of copy to the Secretary of State of the State of Nebraska. See Sec. 20-530, C.S.Neb.1929.

To that second or supplemental attempt to secure personal jurisdiction of the defendant, it filed, along with its answer reserving the same issue, a motion to quash, upon which counsel for both parties have presented argument, both orally and in writing.

Section 20-530, C.S.1929, so far as it is now involved, follows: "The use and operation by a non-resident of the State of Nebraska or his agent of a motor vehicle over or upon any street or highway within the State of Nebraska, shall be deemed an appointment by such non-resident of the secretary of state of the State of Nebraska as his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, growing out of such use or operation of a motor vehicle over or upon the streets or highways within this state, resulting in damages or loss to person or property, and said use or operation shall be a signification of his agreement that any such process which is so served in any action against him shall be of the same legal force and validity as if served upon him personally within this state."

This technique of service has been held to be constitutionally unobjectionable both by the Supreme Court of Nebraska, Herzoff v. Hommel, 120 Neb. 475, 233 N.W. 458; Downing v. Schwenck, 138 Neb. 395, 293 N.W. 278; Rose v. Gisi, 139 Neb. 593, 298 N.W. 333, and by the United States Supreme Court, Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Not its constitutionality, but its availability, is now challenged.

█ 1. The defendant first asserts its immunity from this process upon the ground that it "was neither the owner nor the operator of the automobile which collided with the automobile owned and driven by Floyd M. Covert". That it was not the owner of the automobile is unquestioned. That it did not "operate" the automobile by its "agent" within the contemplation of the statute is not equally certain. Upon that point there is a diversity of judicial opinion, as will appear more definitely from the discussion of the further grounds of the motion to quash. It is considered by the writer of this memorandum, that the trend of the decisions upon the issue, under statutes comparable to the Nebraska Act, is logically in the direction of an affirmative

answer to the question of "use and (or?) operation by a non resident or his agent".

Let two things be noted here; first, that the Nebraska statute nowhere prescribes "ownership" of the automobile as a test of vulnerability to the special form of process which it devises; and secondly, that the act, in the employment of the terms "use and operation" (which later is, perhaps significantly, rephrased, "use or operation") and "by a non-resident of the State of Nebraska or his agent", extends its availability beyond the scope of many laws in other states in pari materia.

The court, therefore, does not consider the process defective upon the first ground of the motion to quash.

2. Secondly, the service is assailed upon the premise that "it affirmatively appears from plaintiff's complaint that the defendant was not using or operating a motor vehicle on the highways of Nebraska" at the critical time. The following consideration of this point may be regarded as responsive, also, to the issue of "operation" raised in the first paragraph of the motion.

It is recognized that the burden of sustaining the validity of a special statutory process rests on him who asserts it; and that the Nebraska act, and comparable laws of other states, have been held to require strict, and not liberal, construction. Downing v. Schwenck, 138 Neb. 395, 293 N.W. 278; Rose v. Gisi, 139 Neb. 593, 298 N.W. 333; Kirchner v. N. & W. Overall Co., D.C., 16 F.Supp. 915; Clesas v. Hurley Machine Co., 52 R.I. 69, 157 A. 426; Brown v. Cleveland Tractor Co., 265 Mich. 475, 251 N.W. 557; Flynn v. Kramer, 271 Mich. 500, 261 N.W. 77. They enlarge the normal burdens and perils of commerce and licit personal pleasure, and are not to be magnified by construction beyond their manifest intendment.

And while it is frequently urged that the courts should seek the legislative intent by judicial reflection upon the mischief to be averted, that reflection may properly be employed only in balanced illumination of the legislative language, not in its enlargement, diminution or distortion. "Existing Michief" may impel a legislature to action. The extent or variety of the mischief must not betray the judiciary into the error of legislation, either through expansion or by contraction of the language of the statutes. Hence, if the court considers the provisions of Sec. 20-530, C.S.Neb.1929, to be broad enough

reasonably to sustain the service under review, the validity of the service must not be denied, even though the court be persuaded that the precise factual situation of the instant parties did not prompt, and would not alone have prompted, its enactment.

In Kirchner v. N. & W. Overall Co., supra, the conclusion of the invalidity of service was predicated on the statutory limitation of the availability of the special service to cases involving "operation" of a motor vehicle by a non-resident, for him, or under his control or direction express or implied.

In Downing v. Schwenck, supra [138 Neb. 395, 293 N.W. 279], the Nebraska Supreme Court, in construing the act here involved as unavailable against the personal representative of a deceased owner, user and operator, used the following language: "We rest our decision upon the ground that the language used can not, as a matter of sound statutory construction, be held to have application to any person except the owner or operator himself."

But the citation of that expression, in denial of the validity of service in this case, begs the negation of the defendant's "use and operation by its agent" of the automobile involved in the collision. That issue was not involved in Downing v. Schwenck, which, incidentally neglects the inclusion, by the statute, of "users" as well as "operators" within its effectiveness and introduces, utterly without statutory warrant, the factor of ownership.

Clesas v. Hurley Machine Co., supra, was determined upon the basis of a Rhode Island statute that is not comparable to the Nebraska act either in its terms or in its coverage.

Brown v. Cleveland Tractor Co., supra, and Flynn v. Kramer, supra, construe a Michigan statute under which the sole jurisdictional prerequisite for the special service was "the operation by a non-resident of a motor vehicle upon a public highway of this state". Comp.Laws 1929, § 4790. Besides, in Flynn v. Kramer there was ownership of the offending vehicle by the defendant sued, but no vestige of evidence that he was concerned in or connected with its operation.

Perhaps the authorities discussed in the briefs of counsel which may be regarded as most nearly in point are Jones v. Pebler, 371 Ill. 309, 20 N.E.2d 592, 593, 125 A.L.R.

451, involving an Illinois statute, Smith-Hurd Stats. c. 95½, § 23, substantially identical with that of Nebraska, and Rose v. Gisi, supra, involving the Nebraska act.

In the Pebler case the Illinois act was held to confer jurisdiction over two non-resident defendants, because: "Pebler was in possession and control of an automobile which he was driving for and on behalf of the co-defendants as their agent, servant, or employee", and because of the employment of the terms "use and operation" and "use or operation" in the statute. Incidentally, as quoted in the opinion, the Illinois act seems not expressly to include the phrase "or his agent" which is found in the Nebraska law. Its appearance in the Nebraska statute, though probably not a necessary condition, is certainly a persuasive support, of jurisdiction. Even without it, the Illinois Supreme Court asserts: "The word 'non-resident' appears without definition, does not purport to be limited to non-resident natural persons, and is obviously broad enough to include every non-resident, individual or corporate, owner or non-owner, using and operating a motor vehicle over Illinois highways."

Rose v. Gisi, supra, appears to be the last instructive, though not necessarily conclusive, Nebraska case under the act. It is quite true that in that controversy the allegedly offending vehicle was owned by the non-resident principal, where here the alleged agent owned the car. But the writer of this memorandum is unable to reach the conclusion that the ownership of the car by the non-resident is a statutory prerequisite to jurisdiction, or its ownership by the physically operating agent more than an inconclusive circumstance, which is not alone effective to negative the jurisdiction. Nor does. the alleged residence in Nebraska of Francis seem logically to alter the status of the defendant, though some courts have emphasized non-residence of the driving agent in affirming their jurisdiction. Can it be possible or conceivable that the defendant would have been "using and operating" the automobile in question "by its agent" if Francis had lived, and had his car licensed in Colorado; but with precisely the same relation to Francis, was not so "using and operating" it, solely because he lived in Nebraska and drove an automobile with a Nebraska license? The statute under consideration is not in the Motor Vehicle Code but in the Code of Civil Procedure, and it does not rest its jurisdiction upon a foreign ownership or licensing of the vehicle.

Moreover, here the defendant was no stranger to the car or its employment. It allegedly directed the car's employment and its use within a defined territory, paid a specified weekly allowance for its use in defendant's business, thereby contributing to, if not paying for, its depreciation and ultimate replacement, and, finally, paid for the gasoline and oil actually consumed in its operation. That participation in the use and operation of the automobile is neither negligible nor irrelevant to the issue now under consideration.

In this case it may be said of Francis, as in Rose v. Gisi it was said of the defendant Carter, that: "He was in fact using the truck" (here an ordinary passenger car) "on a Nebraska highway, as agent in furtherance of his principal's business when the accident happened."

And one must not disregard the persuasive emphasis which the Nebraska Supreme Court places upon the use of the terms, "use and operation", and "use or operation", though it may be remarked that their employment might have received even greater effectiveness if the Nebraska state court had defined, as well as emphasized them. The trend of the decisions upon comparable statutes persuades the court that, within the meaning of the Nebraska act, the defendant, by its agent was "using or operating" and probably "using and operating" the automobile involved with that of Floyd M. Covert in the collision complained of.

Wood v. Wm. B. Reilly & Co., D.C., 40 F.Supp. 507, rests upon a state of facts comparable to that involved here and reaches a conclusion adverse to the jurisdiction of the courts of the local state over the non-resident corporate employer of a resident salesman traveling in his own domestically licensed automobile. There, the statute involved was quite broad and comprehensive. And though it grounded its grant of power to reach the non-resident acceptor of the privileges of its highways upon a premise somewhat different from that of the Nebraska act, it may well be doubted whether logically and rationally, it was less inclusive. But the writer of this memorandum is simply unable to reach the conclusion which appealed to the court in Wood v. Wm. B. Reilly & Co.

In arriving at its opinion favorable to the validity of the service under examination, the court has not overlooked the fact that in the headnote to Sec. 20-530, C.S.Neb.1929, the words, "Non-resident Owners of Motor Vehicles, Service on Secretary of State, Fees, Record," appear. This comment seems to be an editorial enlargement of a headnote in the original act. Presuming that the published session laws correctly reflect the measure as adopted, it may be remarked that, there, the headnote is "Service Non-Resident Owners—Motor Vehicles", Laws of Nebraska, 1929, Chapter 63, and that the title to the bill makes no reference to owners or ownership but is essentially comparable to the body of the measure. That, in doubtful instances, the title to an act, and even catchwords, may be considered in aid of its construction is true. But, at most, such assistance is merely suggestive and can not operate either to enlarge upon or to minimize the coverage of the measure. State v. City of Lincoln, 101 Neb. 57, 162 N.W. 138; Security State Bank v. Aetna Ins. Co., 106 Neb. 126, 183 N.W. 92. Moreover, as between the catchwords and the title, clearly the latter is the more convincing.

Peterson v. Brinn & Jensen Co., 134 Neb. 909, 280 N.W. 171, has been given careful consideration. Manifestly it has no direct connection with Sec. 20-530, C.S. Neb.1929. They deal with different problems. Yet, its reasoning can not be wholly discarded to the extent that it considers the liability of an employer to third parties injured by an employee negligently using his own automobile about the business of the employer and with the latter's authorization express or implied. Then, too, it allows, at least, a glimpse of the definition by the Nebraska Supreme Court of the term "use of an automobile". See page 911 of 134 Neb., page 172 of 280 N.W.

Let it be clearly understood that the court does not confuse the existence of a substantive cause of action against a non-resident corporate defendant, with its amenability to Nebraska process. It is clearly understood that the two are not identical, and need not even coexist. Quite the contrary, we may encounter vulnerability to a cause of action with balking immunity to local process; or, as in Rose v. Gisi, liability to local process without any ultimate substantive obligation to the injured plaintiff. Here the study is only upon the issue of process in the light of the present state of the pleadings.

3. Finally, the defendant predicates its motion upon the circumstance that "it does not appear that Francis * * * had brought the automobile into the state of Nebraska, and it does not appear that said Horace L. Francis was using an automobile brought into the state of Nebraska by the defendant."

This specification of alleged invalidity of service is evidence of the exceptional and scholarly quest of authority in his behalf, by counsel for the defendant. For it is rooted in a memorandum opinion in support of an order quashing service in cases 772 and 774 of the Lincoln Division of this court, Roode v. Ring [1] and Miller v. Ring.[1] Counsel direct the court to that opinion which, if it should now be followed, would support the defendant's objection.

But reluctant as the writer is to depart from a construction sanctioned by his revered and distinguished predecessor, he sees no rational escape from that course. Judge Munger's opinion was filed June 4, 1932. In the intervening ten years the judicial literature upon the controverted point has proceeded convincingly, though far from unanimously, in the contrary direction. And it is the simple and manifest truth that the test of "bringing the vehicle into Nebraska or using an automobile brought into the state by the defendant" is utterly without foundation in the language of Sec. 20-530, C.S.Neb.1929. Its employment and present citation exemplify the peril of logical betrayal which a court encounters when it forsakes the plain language of a legislative act and has recourse for its interpretation to the speculative consideration of the evils which it was presumably designed to intercept.

Conclusion.

It is considered that the defendant's motion to quash is not well taken; and it has therefore been overruled.

---

[1] No opinion for publication.