CECIL F. GALLOWAY, APPELLEE, V. EMIL E. WOLFE ET AL., APPELLANTS.

FILED JANUARY 19, 1929. No. 26393.

*Slama & Donato, J. H. Barry* and *Burkett, Wilson, Brown & Wilson,* for appellants.

*O. S. Spillman, Attorney General, Richard F. Stout, E. S. Schiefelbein* and *Cecil F. Galloway, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action brought by Cecil F. Galloway, county attorney of Saunders county, to enjoin the defendants from promoting public dancing on Sunday at a park located on Scott's lake, about a mile and three-quarters from the village of Morse Bluff, in that county. The defendants are respectively the owner of the land, the Scott's Lake Outing Club, a corporation, and its officers. The petition alleges that the defendants are permitting and promoting public

dancing on the premises of the club, on Sundays, contrary to the statute in that behalf. The defendants by their answers admit that one of the purposes of the club is to hold dances on Sunday in connection with other amusements usually indulged in at amusement parks, but contend (1) that the statute upon which plaintiff bases his action for an injunction is unconstitutional, being class legislation, and (2) that a court of equity has no jurisdiction to grant the relief prayed. An injunction was allowed by the district court, and defendants appeal.

Section 18, art. III of the Constitution, provides: "The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

Section 9795, Comp. St. 1922, is the statute under attack, and, in so far as it applies to the question for decision, is as follows:

"If any person of the age of fourteen years or upward shall be found on the first day of the week commonly called Sunday, * * * engaged in public dancing, * * * he or she shall be fined in a sum not exceeding twenty dollars, or be confined in the county jail for a term not exceeding twenty days, or both, at the discretion of the court. * * * Provided, the provision of this act relating to public dancing shall not apply in cities of metropolitan class having a public welfare board with authority to regulate public dancing."

The first question for determination is whether or not the statute above quoted is class legislation within the prohibition of the Constitution above set forth. The principles which must govern us in determining this question are well established and understood. In *Allan v. Kennard,* 81 Neb. 289, it was held: "The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by artificial and baseless classification at-

tempted to avoid and violate the provisions of the Constitution prohibiting local and special legislation." And it was said in the opinion, page 293: "It is also true that the legislature may classify the subjects, persons or objects as to which it legislates. But such classification should rest upon some difference in situation or circumstances between the thing or person placed in one class and that placed in another." In *State v. Murray*, 104 Neb. 51, 55, the following statement was approved: "By class legislation, we understand such legislation as denies rights to one which are accorded to others, or inflicts upon one individual a more severe penalty than is imposed upon another in like case of offending."

In *Low v. Rees Printing Co.*, 41 Neb. 127, an act excepting those engaged in farm or domestic labor from the operation of the eight hour law was held invalid as class legislation, citing with approval the language of the court in *State v. Sheriff of Ramsey County*, 48 Minn. 236: "In *Nichols v. Walter*, 37 Minn. 264, it was held that a law was general and uniform in its operation which operates equally upon all the subjects within the class for which the rule is adopted, but that the legislature cannot adopt an arbitrary classification, though it be made to operate equally upon each subject within the class; and the classification must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in different classes as to disclose the necessity or propriety of different legislation in respect to them."

"A law which is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations or circumstances provided for, is not objectionable as wanting uniformity of operation." *State v. Berka*, 20 Neb. 375.

In *Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540, 560, it was said by Justice Harlan: "The difficulty is not met by saying that, generally speaking, the state when enacting laws may, in its discretion. make a classification of persons, firms, corporations and associations in order to subserve

public objects. For this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification.' * * * *Gulf, Colorado & Santa Fe Railway v. Ellis*, 165 U. S. 150."

With these principles in mind, let us consider their application to the present problem, and first we should inquire what is the classification attempted to be made by the legislature. The act does not relate to the government of municipalities, and makes no attempt to classify them as such. It has to do only with the conduct of individuals, and divides them into two classes: First, those who live in metropolitan cities, and, second, those who live outside such cities. The first part of the act is general in its terms and includes all persons "of the age of fourteen years or upward" found engaged in public dancing on Sunday. This, therefore, is the class to which the legislation is to be applied. But the act by the proviso seeks to withdraw from its operation persons engaged in public dancing on Sunday in metropolitan cities having a public welfare board with authority to regulate such dances. The effect of this legislation is to make it a misdemeanor punishable by fine and imprisonment for those members of the class engaging in public dancing on Sunday outside of metropolitan cities, but permits other members of the same class to so engage without penalty in the metropolitan cities specified. What reason can be found for this discrimination? Clearly, the mere fact of the location of the individual in one city or another, or in the country, forms no basis for classification. If public dancing on Sunday is a scandal or injurious to health or morals in a village or country park, it is at least equally so in metropolitan cities, if not, indeed, more so, because of the greater number of persons liable to observe it. The only reason suggested is that public dancing may be supervised, regulated and controlled in metropolitan

cities having a welfare board, while they are not subject to such regulation in the country. We will discuss this proposition later on.

It seems to be contended by plaintiff that the classification attempted by the legislation is between counties or surburban communities and metropolitan cities; but, as just above suggested, the act condemned, if vicious, is equally so, considering the general purpose of the legislation, whether committed in a city or less populous community. There is, therefore, no reasonable relation between the act and the classification contended for. Indeed, the legislature seems to have recognized this fact by placing in its proviso the condition that the act should be inapplicable only to metropolitan cities *having a welfare board with authority to regulate public dancing*. We are clearly of the opinion that the classification attempted is of persons or individuals as above indicated, and confers upon members of the class operating in metropolitan cities a special privilege which is withheld from other members of the same class operating in other parts of the state, and is therefore within the prohibition of the Constitution. *Bessette v. People*, 193 Ill. 334; *Badenoch v. City of Chicago*, 222 Ill. 71.

In *Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540, it was held that an Illinois trust statute, providing that all persons who combine their capital, skill or acts for any of the purposes named in the act may be punished as criminals, while agriculturists and live stock raisers, in respect of their products or live stock in hand, are exempted from the operation of the statute, was invalid under the provisions of the federal Constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws, and approved the interpretation of that section as stated in *Missouri v. Lewis*, 101 U. S. 22, 31: "That no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circum-

stances." So far as the phrase "same place and under like circumstances" is concerned, it has no reasonable application to the present case for reasons above stated. It would seem, however, that public dancing is substantially the same wherever carried on, whether out of doors in a park, as here, or in a public hall in a city, and under the circumstances of a dance floor and music.

The plaintiff cites *Allan v. Kennard,* 81 Neb. 289, sustaining a legislative classification discriminating between counties and metropolitan cities with reference to the duties of the county comptroller; there was no attempt to classify persons or individuals; *In re Caldwell,* 82 Neb. 544, classifying barbers as common laborers; and *State v. Murray,* 104 Neb. 51, sustaining the act in question providing a greater penalty for barbers conducting their business on Sunday than that imposed upon common laborers, on the ground that there was a reasonable distinction between barbers and other common laborers, and that the act applied to all barbers in the state. These cases are not in point here. In the instant case the act is not applicable to all members of the same class but discriminates between them without apparent reason.

We next consider the point that metropolitan cities having a welfare board furnish a sufficient difference in circumstances upon which to base the attempted classification. There would be more force in this suggestion if all cities and communities having a welfare board, or power to regulate public dancing, were excepted from the provisions of the act. The reason for the classification would be much more apparent as the regulation of public dances, which require no invitation but are open to all those who are willing to pay a small fee for the privilege, is most desirable on grounds of morality and decency. But to single out metropolitan cities having a welfare board, as a class, has no foundation in reason or experience. The same vices and immoralities may be present at a barn dance in the country as in a gilded palace in a metropolitan city. What reason can be suggested for discrimination, for the pur-

poses of the act, between the city of Omaha and the city of Lincoln? First class cities in Nebraska of over 40,000 and under 100,000 inhabitants, and of 5,000 to 25,000 inhabitants, and second class cities, all have power to regulate public amusements and enforce Sunday laws, but they have no welfare board, and therefore public dancing is a misdemeanor therein. It therefore appears that the only reason for the classification is as applicable to other cities as to those classified, and yet the former are excluded from the privileges and immunities of the latter. Further, the act does not require that public dances be in fact regulated in metropolitan cities, but merely that they have a welfare board with *power* to regulate. If the classification of the proviso had been *all cities and villages* having a welfare board having authority to regulate, or, better still, in which public dancing is supervised and regulated by the municipal authorities, the objection of discrimination between different localities would be met. But suppose these other cities provide a welfare board, still public dancing on Sunday cannot be permitted because they do not measure up to the metropolitan class in population. Before any city outside the metropolitan class can enter the class erected by this statute it must have a population of 100,000 or more, and have a welfare board with authority to regulate public dancing. As a practical proposition they are prevented from ever entering that class, and so within the rule laid down in *State v. Kelso,* 92 Neb. 628, that a classification which limits its provisos to a certain class then in existence, excluding all others from ever entering such class by growth, development, or other cause, is invalid. True, it may be that in 50 or 100 years one or more cities may have a population sufficient to qualify them as metropolitan, but the possibility, except perhaps the city of Lincoln, is so remote as to exclude it from consideration.

In *Bessette v. People,* 193 Ill. 334, it was held that a statute regulating horse-shoeing in cities of over 50,000 and permitting cities of over 10,000 to adopt the provisions of the act, thus excluding towns under 10,000, is void as

discriminatory and unreasonable between persons engaged in the same occupation; and also void if construed as a classification of towns and cities. In *Badenoch v. City of Chicago*, 222 Ill. 71, an act making salaries and wages of officers of certain municipalities subject to garnishment, and exempting others, was declared void and as discriminatory as between persons of the same class. Upon the general question of classification, see, *State v. Mayo*, 15 N. Dak. 327; *Cleland v. Anderson*, 66 Neb. 252; *State v. Robinson*, 35 Neb. 401; *Livingston Loan & Building Ass'n v. Drummond*, 49 Neb. 200; *State v. City Council of City of Lincoln*, 98 Neb. 634.

In *Rushart v. Crippen*, 99 Neb. 682, we held: "In a suit to test the constitutionality of a legislative act, the presumption that an exception to general provisions is justified by facts within the knowledge of the lawmakers can only be overthrown by pleading and proof to the contrary, unless an unreasonable or arbitrary classification appears on the face of the act or is disclosed by facts of which the court will take judicial notice." Giving full force to the presumption above noted, we are constrained to hold invalid that portion of the act in question relating to public dancing on Sunday as being discriminatory between different individuals of the same class, between metropolitan cities, and between them and other cities and communities, by reason of a classification having no logical basis for its support.

We must not be understood as questioning the power of the legislature to prohibit public dancing on Sunday by an act which operates alike upon all persons within the state, or upon all persons alike within the classes to which the law is made applicable, provided the classification declared is based upon such differences of place and circumstance, having a logical relation to the general purpose of the act, as to afford a reasonable basis for differentiation between the classes named. Nor is the remainder of the act affected hereby, it not appearing that the invalid provisions constituted the inducement for its enactment.

In view of our holding, it will not be necessary to discuss the other defense. It follows that the judgment of the district court must be reversed and the action dismissed.

REVERSED AND DISMISSED.