W. H. BILL DORRANCE, SHERIFF OF THE COUNTY OF DOUGLAS, STATE OF NEBRASKA, APPELLANT, V. COUNTY OF DOUGLAS, STATE OF NEBRASKA, ET AL., APPELLEES, STATE OF NEBRASKA, INTERVENER, APPELLEE.

32 N. W. 2d 202

Filed May 7, 1948.    No. 32373.

*Fitzgerald & Smith, Seymour L. Smith,* and *Robert L. Smith,* for appellant.

*Walter R. Johnson,* Attorney General, *Homer L. Kyle, James J. Fitzgerald,* and *Ephraim L. Marks,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action for a declaratory judgment to have chapter 86, Laws 1943, declared unconstitutional. The act now appears as sections 33-117, 33-117.01, 47-112.01, 47-113, and 47-113.01, R. S. 1943. The trial court held the act to be valid and plaintiff appeals.

On January 9, 1947, the plaintiff as sheriff of Douglas County commenced this action in which he alleged that the Douglas County jail houses federal, state, county, and city prisoners. The evidence shows that in the boarding of such prisoners the sheriff has made an average annual profit of approximately $11,000, the difference between the amounts allotted for the purpose by statute and the actual cost of so doing. The act in question became effective on January 9, 1947, by its terms, and provides that after said date counties having a population of 200,000 or more inhabitants shall provide quarters and equipment for preparing and serving meals to prisoners confined in the county jail, and that all statutory allowances for boarding prisoners shall be paid to the county. It further provides that the sheriff shall have full charge and control of the quarters and service, and shall furnish all meals, washing, fuel, lights, and clothing for prisoners at actual cost to the county. Other provisions are set forth which are not important here. Plaintiff contends that the act is unconstitutional because it is special legislation prohibited by article III, section 18, Constitution of Nebraska; that it violates the Fourteenth Amend-

ment to the Constitution of the United States; and that it is violative of article III, section 14, Constitution of Nebraska.

It is conceded that Douglas County is the only county in Nebraska having a population in excess of 200,000 inhabitants. The plaintiff does not challenge the right of the Legislature to enact such legislation if made applicable to all counties. The objection is that it applies to one county alone and is therefore special legislation and not a general law.

All reasonable doubts must be resolved in favor of constitutionality in construing a legislative act. Sommerville v. Johnson, *ante* p. 167, 30 N. W. 2d 577. For purposes of legislation the Legislature may classify counties when the classification rests upon reasonable differences of situation or circumstances which call for distinctive legislation for the class. State ex rel. Cone v. Bauman, 120 Neb. 77, 231 N. W. 693. Where a class of counties is established on the basis of population in such a manner that other counties may in the future enter the class without additional legislation, the law is considered to be general in its nature. State v. Frank, 61 Neb. 679, 85 N. W. 956. The present act is not unconstitutional because of the fact that it is presently applicable to Douglas County alone. Where reasons exist for a legislative classification, which are not superficial or baseless, the courts may not properly interfere. Such classifications do not violate constitutional provisions against local and special legislation. Allan v. Kennard, 81 Neb. 289, 116 N. W. 63. While such classifications are necessarily somewhat arbitrary, they have been uniformly upheld by the courts. The care and feeding of prisoners in the various counties of the state is a matter which is affected by the population of the county. The evidence shows different conditions existing in the various counties of the state. The number of prisoners to be fed varies, generally in proportion to the population of the county. The facilities provided are not uni-

form and the labor contributed by the sheriffs and their families is a variable factor. The record shows that the classification of counties on a population basis is reasonable under the existing situation and that the Legislature was warranted in making such a classification for the purposes of the act. Under these circumstances it is not the province of the court to re-examine the evidence upon which the Legislature acted. If the legislative classification is upon a rational basis, and consequently not unreasonable or arbitrary, it meets the requirements of the Constitution.

It has been a common legislative practice to classify counties and cities on a population basis in prescribing the manner of conducting their functions. In sustaining such classifications it has been recognized that problems of administration have a direct relation to population. It is possible that an occasional exception might exist or that one might by speculation create a possible exception, but this cannot operate to change the rule. West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703.

It is argued that the classification of counties for the purpose of fixing salaries carries with it the fact that the larger the population the greater is the responsibility of county officers and that the salaries of public officials cannot properly be made greater in the less populous counties than in the more populous ones. This is generally true and the Legislature has complied with the rule in fixing such salaries. §§ 23-1101 to 23-1110, R. S. 1943. It is then contended that the statute before us makes it possible for a sheriff in a county of lesser population to receive greater emoluments from his office than does the sheriff of Douglas County. The difficulty with this contention is that the allowances made for the boarding of prisoners is not salary within the meaning of the statute fixing the salaries of sheriffs, and no complaint can properly be made, based on a salary differential. This being so, the act is not unconstitutional for that

reason. It does not tend to fix sheriffs' salaries higher in counties of lesser population than Douglas County.

It is next argued that the act abridges the privileges and immunities of plaintiff and denies him the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. This contention is based on the claim that the act denies one within a class the privileges and immunities of others in the same class, a question we have discussed in relation to the Nebraska Constitution. The Supreme Court of the United States has reached no different conclusion in cases similar in principle. In Budd v. People of State of New York, 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247, it was held that a statute which applies to elevator owners in places having a population of 130,000 or more does not deprive the owners of the equal protection of the laws within the meaning of the Fourteenth Amendment. In Mason v. Missouri, 179 U. S. 328, 21 S. Ct. 125, 45 L. Ed. 214, it was held that a registration law based on population, when there is in fact but one city in the class, does not deny to the citizens of such city the equal protection of the laws within the meaning of the Fourteenth Amendment. See, also, Ft. Smith Light & Traction Co. v. Board of Improvement of Paving District No. 16, 274 U. S. 387, 47 S. Ct. 595, 71 L. Ed. 1112; Phelps v. Board of Education, 300 U. S. 319, 57 S. Ct. 483, 81 L. Ed. 674. We hold that chapter 86, Laws 1943, is not violative of the Fourteenth Amendment to the Constitution of the United States.

Plaintiff next urges that the act contravenes article III, section 14, of the Nebraska Constitution in that it contains more than one subject. We think this objection is controlled by the case of Endres v. McDonald, 115 Neb. 827, 215 N. W. 114. There we were dealing with chapter 86, Laws 1925. The act was intended as an amendment to section 3006, Comp. St. 1922. This section as amended became section 47-111, Comp. St. Supp., 1941, which in turn is one of the sections amended by chapter

86, Laws 1943, presently before us. It was plaintiff's contention in the Endres case that chapter 86, Laws 1925, did not operate to amend or repeal section 2381, Comp. St. 1922, which later became section 33-120, Comp. St. Supp., 1941, and in turn one of the sections amended by the act now before us. We held in that case that chapter 86, Laws 1925, by attempting to amend section 2381, Comp. St. 1922, without referring to it by title or otherwise, had the effect of nullifying the whole act. Clearly, we there recognized that the two sections dealt with a single subject matter — the allowances to sheriffs for boarding prisoners in county jails. The Legislature in the present act did that which it failed to do in the 1925 act which resulted in our holding of invalidity. There is but one subject contained in the act before us, although it involves more than one section of the statute. The sections amended and repealed are properly set forth. There is no merit in the claim that chapter 86, Laws 1943, was enacted in violation of article III, section 14, of the Nebraska Constitution.

The act meets all requirements of the state and federal Constitutions which have been presented. The judgment of the district court is therefore affirmed.

AFFIRMED.

SIMMONS, C. J., concurring.

I am in accord with the judgment of affirmance of the majority.

The cause presents constitutional issues. Beneath those issues and motivating this litigation and the result which plaintiff seeks is a financial issue. That issue is clearly stated by plaintiff in his assignments of error and argued by written brief and oral presentation at the bar of the court.

Plaintiff contends the courts should take judicial notice of the fact that the larger the population, the greater the responsibility of county officers; that the emoluments of office cannot be made greater for public officials in the less populous counties than in the more populous

counties; that what may be done under an act is material in determining its constitutionality; and that if the act in question may cause sheriffs in the less populous counties to receive more compensation than those in the more populous counties, it is invalid.

For the majority to hold, as it does, that the statutory allowance for boarding occupants of county jails is not salary within the meaning of section 23-1101, R. S. 1943, is to state the obvious, but not to answer the contention. Plaintiff does not contend that the allowance for the boarding of prisoners is a part of his statutory salary. It is his contention that the profits which he makes from the boarding of prisoners is an emolument of his office, over, above, and in addition to his salary, which he has a right to keep and which the Legislature cannot take from him constitutionally, save and unless it also is taken from all sheriffs. Plaintiff's contention is based on that premise. The premise is not sound.

The record clearly discloses the basis of this financial issue. Plaintiff was sheriff of Douglas County from 1939 to 1947. The Douglas County jail houses federal, state, county, and city prisoners. During the above period plaintiff made a profit averaging approximately $11,000 a year from the feeding of prisoners. It appears from the record that the plaintiff received 15¢ a meal for feeding county and city prisoners; 75¢ a day for feeding state prisoners, with the exception of two years when the Legislature cut his allowance to 45¢ a day; and one dollar a day for feeding federal prisoners. For the three years shown plaintiff received approximately $5,000 a year for feeding federal prisoners. Plaintiff's costs for the feeding of prisoners over the eight-year period averaged about 42.5 percent of the gross amounts received for that purpose. His profits averaged about 57.5 percent of the amount received for that purpose. It is these profits which the plaintiff seeks to retain.

The first question to be determined is whether or not the plaintiff had the right to keep and retain these

profits under the law as it existed prior to the enactment of the legislation here assailed. The question of the constitutionality of the act in question, insofar as this contention is concerned, does not arise unless and until it is determined that plaintiff had the right to these profits as a part of the emoluments and perquisites of his office as sheriff and in addition to his salary. I would answer that first question. Plaintiff presents it. The majority neither considers nor decides it.

For the purpose of fixing salaries, counties of this state are classified using the base of population. § 23-1101, R. S. 1943. Plaintiff does not question the validity of this classification, but argues that such a classification is held reasonable because it is assumed "that no situation can possibly arise whereby the officers in the less populous counties can receive more compensation than those in the more populous counties."

A public officer in this state must perform all the duties of his office for the compensation allowed by law. Johnson v. Johnson, 141 Neb. 239, 3 N. W. 2d 414. The salary of a sheriff is fixed by statute, on an annual basis, to be paid monthly. §§ 23-1102 to 23-1110, R. S. 1943. The sheriff has been on a salary basis since 1907. The sheriff has charge of the county jail and of the prisoners in the same. §§ 23-1703 and 47-105, R. S. 1943. If he elects to do so he may act as jailer, and if not, the jailer must be a deputy appointed by the sheriff. § 47-115, R. S. 1943. It is clearly the intention of the Legislature that the duty of caring for prisoners shall be that of the sheriff or his deputy. That duty is expressed in section 47-111, C. S. Supp., 1941, and as amended by chapter 86, Laws 1943, as appearing in sections 47-113 and 47-113.01, R. S. 1943.

Section 33-120, C. S. Supp., 1941, fixing the fees of a sheriff, provided for an allowance of 75¢ a day for boarding all prisoners in all counties where there is an average of less than 50 prisoners per day, and 45¢ per day where there is an average of more than 50 prisoners

per day. It is also provided that the sheriff should make a quarterly report to the county board of fees collected and earned, "except mileage collected or earned," and shall "pay all fees earned to the county treasurer." These provisions were retained in section 33-117, R. S. 1943. These provisions negative any legislative intent that the sheriff should make a personal profit out of the feeding of prisoners. This conclusion is strengthened by the provisions of sections 29-1002 and 29-1004, R. S. 1943, that, subject to certain conditions, it is the "cost of keeping and maintaining any prisoner" which shall be paid by the county or state.

We held pursuant to these provisions in the original 1907 act: "A sheriff is required to report all fees earned by him by virtue of his office, which are not especially excepted from his report by statute. His salary is in lieu of fees" (State ex rel. Antelope County v. Miller, 98 Neb. 179, 152 N. W. 326), mileage being excepted (Red Willow County v. Peterson, 91 Neb. 750, 137 N. W. 987).

In Dunkel v. Hall County, 89 Neb. 585, 131 N. W. 973, a case dealing with jailer's fees, we said arguendo: "It is contended by defendant that under these provisions of the statute it was the intention of the legislature that the amount fixed as a salary 'for their services' was intended to cover any and all services performed by such sheriff, and that all fees earned by him should belong to the county; and that if plaintiff were allowed the $1.50 a day as jailer's fees he would be required, under the terms of section 5, *supra,* to pay it over to the county treasurer. If that be a correct construction of section 5, then the sheriff would have to turn over all money collected by him for the 50 cents a day for boarding each prisoner, notwithstanding the fact that he had been obliged to previously advance his private funds in the payment for the provisions necessary for the furnishing of such board—expenditures which might eat up a very considerable portion of the salary allowed.

the sheriff for his services. We are unable to so construe this statute."

That statement goes no further than to say that the sheriff is not required to bear the cost of food for prisoners out of his own salary without receiving restitution. The statement does not say that the sheriff is entitled to retain profits made from the feeding of prisoners. Again, the exception contained in the act as to mileage alone negatives that conclusion.

This review clearly demonstrates that the sheriff has no statutory right to keep and retain these profits and that they are to be accounted for and paid to the county.

The question here presented has been considered and determined in a number of states where the sheriff is on a salary, as he is in Nebraska, and not on a fee basis. Their decisions sustain these conclusions. The county jail is not furnished to the sheriff as a place in which to conduct a private business. The sheriff receives and cares for prisoners in his official capacity and not in his individual capacity. He receives the fees for boarding prisoners because he is an official of the county. The theory of an allowance for the board of prisoners is that such payment shall be sufficient to reimburse him for actual expenses; it is intended to prevent both an extravagant overfeeding and a niggardly underfeeding of the prisoners. It was not enacted for the purpose of adding a perquisite to the sheriff's office, nor was it intended that the sheriff should receive a private personal profit out of the feeding of prisoners and at the expense of the prisoners, the county or the state. It is against public policy for a public official to be so placed that in the performance of a public duty a conflict may arise between his personal financial interest and his public duty, or so that he may be required to choose between personal interest and public duty. So long as he retains public office, private interest must yield to public duty. That conflict arises when a personal private profit is made from the performance of

a public duty. To hold otherwise would be to say that the sheriff has, not a fixed and definite salary, but a very indefinite salary. The money received by a sheriff for the care and feeding of prisoners in excess of what was actually expended by him for those purposes belongs not to the sheriff but to the county. Freeholders of Hudson v. Kaiser, 75 N. J. L. 9, 69 A. 25; Bowman v. Harford County, 166 Md. 296, 171 A. 48; Kommers v. Palagi, 111 Mont. 293, 108 P. 2d 208; Howell v. City of Ashland, 239 Ky. 349, 39 S. W. 2d 468; Holland, Jailer, v. Fayette County, 240 Ky. 37, 41 S. W. 2d 651, and cases there cited; Adams v. Maricopa County, 16 Ariz. 418, 145 P. 884; Kohler v. Powell, 115 Ohio St. 418, 154 N. E. 340.

I would so answer plaintiff by basing the decision as to this contention upon the first question, and not upon the second question which it presents.

I am authorized to state that Paine and Wenke, JJ., concur in this opinion.