IN RE ESTATE OF PAUL V. SHIRLEY, DECEASED.
MARGARET STARMAN, APPELLEE, v. MARY F. SHIRLEY,
EXECUTRIX OF THE ESTATE OF PAUL V. SHIRLEY,
DECEASED, APPELLANT.

76 N. W. 2d 749

Filed May 11, 1956. No. 33911.

*Kennedy, Holland, DeLacy & Svoboda,* for appellant.

*Young, Holm & Miller* and *Edmund D. McEachen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action began as a claim against the estate of Paul V. Shirley, deceased. Claimant was employed as a domestic in the home of deceased during his lifetime. She fell on stairs in the home while engaged in her employment and suffered severe injuries. Subsequent thereto Mr. Shirley died. Claimant filed her claim against the estate in county court. It was there denied. Claimant appealed to the district court.

There the claim was tried, in essence, as an action in tort for damages. For convenience we here designate claimant as plaintiff and the executrix of the estate as defendant.

Issues were made in the district court and trial was had. Defendant moved for a directed verdict at the close of plaintiff's case-in-chief, and again at the close of all the evidence. These motions were overruled. At the close of the evidence on motion of plaintiff, the trial court ruled that the only issue to be submitted to the trial court was the amount of the recovery. This motion rested on the failure of the defendant's decedent to maintain a handrail on the stairway which plaintiff claimed was required by an ordinance of the city of Omaha. There is some doubt as to the clarity of the instructions in that regard; however, the parties here take the position that that was the only issue submitted to the jury. The result was a substantial verdict for the plaintiff.

Subsequent to the filing of a motion for judgment notwithstanding the verdict or in the alternative for a new trial, and prior to a ruling thereon, defendant

moved the court for permission to amend the answer so as to challenge the constitutionality of the ordinance, if applicable to private residences, as violative of the Fourteenth Amendment of the Constitution of the United States and the Constitution of Nebraska as an unwarranted exercise of the police power. The court granted the motion and the amendment was made. Thereafter the court overruled the motion for judgment notwithstanding the verdict and for a new trial. Defendant appeals.

We reverse the judgment of the trial court and remand the cause with directions to render judgment for the defendant.

The stairway involved was between the second and third floors of the Shirley home. At the top, the stair opening was surrounded by bannisters and railing, save for the opening at the steps. The first steps below the third-floor level were winders of uneven width so as to permit a 90° turn in the stairs. There were then rectangular steps followed by winders permitting another 90° turn followed by rectangular steps to the second floor.

The stairway was enclosed by plastered walls. There was no handrail on either side of the enclosed stairway.

Plaintiff testified that she started down the stairway from the third to the second floor and when "down about 2 or 3 steps" her "foot sort of slid and caught and it threw me forward and slightly to the right"; that she did not know what caused her to start falling; and that she fell "sort of to the right wall and then grabbed toward the wall to try to break my fall and there was nothing to hang onto and I went down head first."

Plaintiff alleged that the stairway was dangerous and unsafe in that it had no handrail, bannister, or other safety device on either of the stairway walls; that the failure to provide a handrail was in violation of section 6-11.3(i) of Ordinance 14924 of the city of Omaha; that

by reason of the absence of the handrail or other safety device she was unable to avert or break her fall; and that she was injured as a proximate result of that failure and negligence.

Defendant by answer admitted the employment; denied that the stairway was unsafe; denied negligence; alleged that plaintiff's injuries were caused solely by her own negligence; and pleaded assumption of risk.

The cause was tried on those issues. The question of constitutionality of the ordinance was presented as above recited.

The defendant assigns error as to the rulings on the various matters and in the admission of evidence.

The first question to be determined here is whether or not the ordinance is applicable to a stairway in a private residence and, if so, whether it is constitutional as a proper exercise of the police power.

We have held: "The police power is an attribute of state sovereignty, and, within the limitations of state and federal Constitutions, the state may, in its exercise, enact laws for the promotion of public safety, health, morals, and generally for the public welfare." State v. Geest, 118 Neb. 562, 225 N. W. 709.

Obviously a serious question is raised as to whether or not a requirement by ordinance for a handrail on a stairway in a private home is a valid exercise of the police power. However, before we reach that question, there comes the preliminary question as to whether or not the ordinance involved makes that requirement.

We go to the second question in the light of the rule that when an ordinance or statute is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes sure its validity will ordinarily be given. Union Stock Yards Co. v. Nebraska State Railway Commission, 103 Neb. 224, 170 N. W. 908.

We consider the question in the light of the rule that in

construing a statute or ordinance the legislative intent is to be gathered from the necessity or reason for its enactment, and its several provisions should be construed together, in the light of the general objects and purposes of the act, so as to give effect to the main intent. Anstine v. State, 137 Neb. 148, 288 N. W. 525.

Parts of the Building Code ordinance were introduced in evidence. Article 6 of the code relates to "Classification of Building." Section 6-6.1 provides: "All buildings and structures now existing or hereafter erected, altered or enlarged, shall be classified as follows and shall be subject to the special provisions relating to each class, and the general provisions relating to all classes.

"Special Class: Churches (The provisions covering the requirements for buildings in Class VI shall apply).

"Class I. Office buildings, hotels, clubs and rooming houses (sleeping accommodations more than ten people).

"Class II. Theatres, moving picture and vaudeville houses.

"Class III. Apartments, tenements and residences.

"Class IV. Schools, hospitals, homes for sick and aged, asylums, jails, police stations and homes for children and imbeciles.

"Class V. Storage, sales, department stores, manufacturing and garages.

"Class VI. Lodge halls, dance halls, banquet and assembly halls and skating rinks.

"Class VII. Miscellaneous, such as grand stands, athletic and amusement parks, stables and sheds."

Each classification is given a separate treatment in the article. Both parties here assume that the building falls within Class III. Under "Class III" there are 30 separately numbered sections dealing with construction in relation to height; live loads; habitable rooms; pantries, bathrooms, and water closets; bay windows and light shafts; frame buildings; quantity of air for

each person; subdividing habitable rooms; basement or cellar rooms in new tenements and existing tenements; basement walls and floors; entrance halls; stair halls; dividing walls between apartments; bay windows, courts, and vent shafts; bottom of shafts, courts, and yards; stairways; stair treads and risers; fire escapes and their obstructions; porches; access to roof; access to rooms through bedrooms; windows in water closets; bathroom requirements; sinks; buildings damaged by fire; frame tenements; and unsanitary conditions. Of these provisions, 6 are related by the language of the section to all buildings in the class, 22 are related to tenements or apartments, and 2 have provisions in part relating to tenements.

Section 6-6.61 deals with stairways. Concededly it is limited to existing and new tenements. It sets out the requirements for stairways in such structures and includes therein requirements for handrails on enclosed and open stairways.

Defendant contends that here was the place to put requirements as to handrails on stairways in private residences, had that been the intention, and that the absence of such requirement negatives such an intent.

The rule is: The maxim, expressio unius est exclusio alterius, means that where a statute or ordinance enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned, unless the legislative body has plainly indicated a contrary purpose or intention. Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409.

Plaintiff contends that a contrary intent is plainly indicated by other provisions of the act. Plaintiff then refers to the provision of section 6-6.1 (above quoted) that structures "shall be subject to the special provisions relating to each class, and the general provisions relating to all classes." Plaintiff then goes to Article 11, "Stairways," and there in a subparagraph in section

6-11.3 finds this provision upon which she bottoms her cause: "(i) Stairs which are less than three feet three inches wide shall have not less than one hand rail, and stairs which are more than three feet three inches wide shall have not less than two hand rails. Stairways which are over eight feet wide shall have one or more double intermediate hand rails with end newel posts as approved by the Chief of Building Department."

Before analyzing Article 11 we have examined those parts of Articles 7, 8, 9, and 10 which were offered in evidence.

Of Article 7, sections 6-7.1, 6-7.2, 6-7.3, 6-7.4, 6-7.5, 6-7.6, at least a part of section 6-7.7, and all of section 6-7.62 appear to have been offered in evidence. Pages 50 to 63, inclusive, of the ordinance are not here. The parts of the above sections introduced indicate by their terms that they are of a general nature. Section 6-7.1 provides that if there is a conflict between general provisions and special provisions that the special provisions shall govern.

Article 8, "Miscellaneous Details," is here only in part. Pages 65 to 72, inclusive, of the ordinance are not here. The sections that are here deal with alcove rooms, awnings, drains, and chimneys.

Article 9 is here. By its subtitle it relates to "Ventilation in Buildings of Classes II, IV, V, and VI."

Article 10 deals with fire escapes, standpipes, and automatic sprinklers for fire protection.

Article 11 deals with "Stairways." An analysis of its provisions reveals that it is not made up of "general provisions relating to all classes" of structures, but rather contains a series of special provisions relating generally to two or more of the various classes. As shown later herein it is complementary of the provisions of Article 6 which deal with Class III structures.

The opening paragraph of section 6-11.1 relates to existing stairway and stairway fire escapes in fireproof buildings.

Section 6-11.1(a) relates to stairways in structures in Classes I and V. Paragraphs (b), (c), and (d), of section 6-11.1 obviously relate to buildings in those classes. Section 6-11.1(e) relates to the width of stairways in Classes I, IV, and V. Section 6-11.2 relates to the width of stairs and fire escapes in buildings in Classes I and V. Without any indicated change in the classes covered by the provision, section 6-11.3 provides that the width of stairway fire escapes, and three-fourths of the width of sliding fire escapes "required by this code" may be deducted in determining the width of stairs required. This is followed by paragraph (a) relating to the location of stairways "as far from each other as practicable." There is a particular reference to buildings in Classes I to V that stairways "shall be complete in every respect from the first to the topmost floor." This is the first requirement that is specifically inclusive of Class III buildings.

Paragraph (b) requires two stairways from "every story below the street grade."

Paragraph (c) relates to stairways where two areas of the same building are separated by fireproof dividing walls.

Paragraph (d) relates to stairways where buildings are connected by fireproof bridges.

Obviously none of the above provisions are designed to be applicable generally to residences.

Paragraph (e) specifically relates to stairways in buildings in Classes I and V.

Paragraph (f) relates to exterior stairways in buildings of Classes I and V.

Paragraph (g) relates to the width of stairways and stairway fire escapes in buildings in Class V.

Paragraph (h) relates to the width of stairways, and the reduction in width in the higher stories with a particular provision that no stairway in a department store shall be less than 3 feet in width.

Then follows paragraph (i) which the plaintiff would

pick bodily out of its context and use as a separate, independent, general provision applicable to all classes of structures. It provides for handrails on stairways depending on their width. Obviously, by sequence and context, it relates to the stairways mentioned preceding it—and those provisions do not relate as to width in anywise to residence stairways. The language in section 6-11.3(i) that "Stairways which are over eight feet wide shall have one or more double intermediate hand rails with end newel posts" might in exceptional cases be applicable to a residence, but obviously would be quite applicable to Class V structures, the classification referred to in the second preceding paragraph.

We find nothing in Article 11 which directly or by inference sustains a contention that section 6-11.3(i) was intended to apply to stairways in residences. A contrary intent appears to be the only rational conclusion.

Paragraph (j) prohibits "spiral" stairways in stairways "hereafter erected"; prohibits winders "except in residences"; and permits "circular or elliptical stairways" under certain circumstances. Paragraph (k) relates to the height of risers and the width of treads. Paragraph (l) relates to "counter balancer" stairways or "ladder fire escape" hereafter "erected on any public thoroughfare." Paragraph (m) requires the approval of the Building and Fire Departments as to the location of "every stairway required by this Article."

Obviously these provisions cannot be held as normally applicable to residences while they might reasonably have reference to the particular classes of structures named in the article.

Our conclusion that Article 11 is complementary of Article 6 is sustained by an examination of the handrail provisions of the various classes of buildings as set out in Article 6 in comparison with those of Article 11. There is no provision as to stairways and handrails in the provisions dealing with Class I buildings in

Article 6. That void is supplied by the provisions in Article 11 as to that class of structures.

Section 6-6.16 makes provision as to stairways in Class II buildings. As above pointed out, Article 11 makes no specific provision as to handrails and stairways in buildings of this class.

As above pointed out, section 6-6.61 relates to stairways and handrails in tenements only. Article 11 makes no reference to stairways or handrails in this class of buildings.

As to Class IV buildings, section 6-6.82 provides for the number and width of stairways, and that "All stairways shall have railings on both sides." (§ 6-6.82(c).) As above pointed out, Article 11 makes no reference to this subject matter except as to the formula contained in section 6-11.1(e) for determining the width of stairways and fire escapes.

Article 6 with reference to Class V buildings contains provisions (section 6-6.105) relating to stairways being kept unobstructed, and relates the exit doors, halls, and passageways to the width of the stairs. It provides for their lighting and numbering. As above pointed out, provisions relating to stairways and handrails as to this class of buildings are stated in Article 11.

Article 6 with reference to Class VI buildings contains provisions (section 6-6.115) as to the width of stairways, number of stairways, and that "Stairways shall have handrails on each side." As above pointed out, Article 11 makes no reference to handrails or stairways in this class of buildings.

Class VII includes grandstands, amusement parks, grain elevators, stables, sheds, and miscellaneous structures. Neither Article 6 nor Article 11 makes specific reference to stairs, stairways, or handrails in connection with the structures in this class. An absence of such provision as to this class of structures appears to be reasonable. And yet if plaintiff is correct in the analysis of the ordinance, then it would seem to follow that the

provisions of section 6-11.3(i) would apply to all buildings and structures included in this miscellaneous classification. There is no indication of such a far-reaching intent in this ordinance.

We find that section 6-11.3(i) does not apply to stairways or require handrails in private residences. Plaintiff grounded her action, on the applicability of that section. It necessarily follows that the trial court erred in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

The judgment is accordingly reversed and the cause remanded with directions to render judgment for the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.