METROPOLITAN UTILITIES DISTRICT, A MUNICIPAL CORPORATION, APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

107 N. W. 2d 397

Filed January 27, 1961. No. 34913.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Benjamin M. Wall, Edward M. Stein,* and *Steven J. Lustgarten,* for appellant.

*George C. Pardee, G. H. Seig,* and *Harry H. Foulks, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was instituted in the district court for

Douglas County by the Metropolitan Utilities District, a municipal corporation to which we shall hereinafter refer as the district, against the City of Omaha, a municipal corporation to which we shall hereinafter refer as the city. The action is in the nature of a declaratory judgment suit and was brought for the purpose of determining the validity of a contract entered into between the district and the city whereby the district agreed to collect for and remit to the city the sewer service charges which the city, by ordinance, had imposed upon those using its sewer system and, if valid, to determine the rights, powers, duties, and obligations of the parties thereunder. The trial court held the legislative act, under and pursuant to which the parties had entered into the contract herein involved, unconstitutional in certain respects and, because other statutory requirements imposed upon the district had not been properly complied with, that the contract was inoperative and without force and effect. The city thereupon filed a motion for new trial and this appeal was taken from the overruling thereof.

The district has exclusive management and control of the water and gas systems serving the city and surrounding territory. The city is of the metropolitan class governed by a home rule charter adopted by its electorate on November 6, 1956. It has the exclusive management and control of the sewer system of the city. After the 1959 Legislature had adopted L. B. 295 on June 9, 1959, with an emergency clause, the district and city did, on March 2, 1960, enter into the agreement hereinbefore referred to. By its ordinance No. 21141, passed on December 29, 1959, the city fixed the rates which the users of its sewer system were to pay and which, under its contract with the city, which ordinance No. 21141 authorized, the district agreed to collect. The parties to the contract are unable to agree as to their respective rights, powers, duties, and liabilities thereunder and under the statutes of the state

and ordinances of the city applicable thereto. In view of that fact they seek, as the contract provides they shall, to have the validity and enforcibility thereof judicially determined before they put the contract into effect by operating thereunder.

The action involves a question as to the constitutionality of a statute. Consequently, since declaratory relief is sought, copies of the proceedings were served on the Attorney General of the state. See § 25-21,159, R. R. S. 1943. However, no appearance was made in the action by the Attorney General either in the court below or in this court.

A public sewer system is a public utility; a municipality may, by ordinance, fix and collect reasonable service charges for the use thereof upon a proper basis; and doing so relates to a matter of state-wide concern. Michelson v. City of Grand Island, 154 Neb. 654, 48 N. W. 2d 769, 26 A. L. R. 2d 1346.

Where, as here, there is an actual controversy between the parties and justiciable issues are presented by all the interested parties, who are parties in the proceedings, the Uniform Declaratory Judgments Act is applicable. See, Lynn v. Kearney County, 121 Neb. 122, 236 N. W. 192; Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397. The action being equitable in its nature we shall consider the cause de novo. State Farm Mutual Automobile Ins. Co. v. Kersey, *ante* p. 212, 106 N. W. 2d 31.

The questions raised involve the constitutionality of certain statutes; the construction thereof as well as of ordinance No. 21141 passed by the city under and pursuant thereto; the authority of the district and city thereunder; and the construction of such authority. In view thereof we shall set forth certain principles relating thereto before discussing separately the questions raised. Before doing so we will dispose of the city's contention that the question of constitutionality was not properly or sufficiently pleaded as an issue in view

of our holding to the effect that: "* * * before a law can be determined unconstitutional, the express provision of our constitution which the law contravenes must be pointed out." State ex rel. Miller v. Bryant, 94 Neb. 754, 144 N. W. 804. It is apparent that the constitutional provision relied upon by the district must have been pointed out to the court below, for it passed thereon, and it has been fully and sufficiently called to the attention of this court. We find no merit to this contention made by the city. The burden, in this respect, is upon the party so contending. Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490.

Ordinances and statutes are presumed to be constitutional; unconstitutionality must be clearly established; and courts will not pass on a question of constitutionality unless it becomes necessary to do so. United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576; Wilson v. Marsh, 162 Neb. 237, 75 N. W. 2d 723; Wagner v. City of Omaha, *supra;* Dorrance v. County of Douglas, 149 Neb. 685, 32 N. W. 2d 202; State ex rel. Garton v. Fulton, 118 Neb. 400, 225 N. W. 28; Nebraska District of Evangelical Lutheran Synod v. McKelvie, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688; Davis v. State, 51 Neb. 301, 70 N. W. 984.

Validity of statutes and ordinances is favored and when susceptible of two constructions the one holding such statute or ordinance valid will ordinarily be followed. Starman v. Shirley, 162 Neb. 613, 76 N. W. 2d 749. As therein held: "When an ordinance or statute is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes sure its validity will ordinarily be given."

"A district organized under the provisions of articles 10 and 11, ch. 14, Comp. St. 1929 (now Chapter 14, articles 10 and 11, R. R. S. 1943), is a public corporation empowered to perform functions usually performed by

cities of the metropolitan class and is, in its broader sense, a municipal corporation." Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558.

"Municipal corporations are purely entities of legislative creation. They do not exist independent of some action of the legislative department of government bringing them into being. All the powers which they can possess are derived from the creator. Unlike natural persons they can exercise no power except such as has been expressly delegated to them, or such as may be inferred from some express delegated power essential to give effect to that power." Garver v. City of Humboldt, 120 Neb. 132, 231 N. W. 699. See, also, United Community Services v. The Omaha Nat. Bank, *supra*.

"A municipal corporation may exercise only such powers as are expressly granted, those necessarily or fairly implied in or incidental to powers expressly granted and those essential to the declared objects and purposes of a municipality." Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., *supra*. See, also, United Community Services v. The Omaha Nat. Bank, *supra*.

"* * * legislative charters wherein cities are empowered to perform certain acts or functions are construed with a greater degree of strictness than ordinary civil statutes, and the rule in Nebraska is that they shall be strictly construed. Their authority to perform municipal acts will not be extended beyond the plain import of the language of the charter." Garver v. City of Humboldt, *supra*. See, also, Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., *supra*.

"The authority given a public corporation to engage in the operation of a business enterprise carries with it the power to conduct it in the same manner in which a private corporation would deal with its property under similar circumstances." United Community Services v. The Omaha Nat. Bank, *supra*.

The first question raised is, does L. B. 295, as passed

by the 1959 Legislature, authorize and empower the district and city to enter into the contract herein involved? That they followed the necessary legal procedure to do so is evidenced by the record. The trial court held that the act did so authorize and empower. We shall set out so much of the act as is material to this issue, including the title.

"AN ACT * * * relating to sewer rental or use fees in cities of the metropolitan class; to empower and provide that a city of the metropolitan class may enter into a contract with the metropolitan water or metropolitan utilities district serving such city for the purpose of aiding in the collection of any sewer rental or use fee established by such city and to pay the charge therefor; to provide that such a metropolitan water or metropolitan utilities district may by contract provide such services to such city upon payment of the cost thereof, and to terminate water services for nonpayment of such sewer use fee; to provide that such fees shall be charged to the owner of the property served or the person, firm, or corporation using the service; * * *."

"Section 1. In addition to any and all powers granted to metropolitan cities and metropolitan water or metropolitan utilities districts within and serving such cities, a metropolitan city may enter into a contract with the metropolitan water or metropolitan utilities district within its area in order to obtain the use of facilities and services of the water utility of such a district in order to collect all or any part of a sewer use or rental fee which such city may lawfully be entitled to charge and collect.

"Sec. 2. To accomplish the purposes of section 1 of this act, a metropolitan city is empowered to pay such metropolitan water or metropolitan utilities district the charges for such services as set forth in said contract, and such district may discontinue water service to its customers, for failure to pay such sewer rental or use fee.

"Sec. 3. The powers granted in sections 1 and 2 of this act to metropolitan cities, metropolitan water districts and metropolitan utilities districts, are cumulative and not in derogation or amendment of the existing powers of each." Laws 1959, c. 32, p. 186; §§ 1, 2, and 3, now §§ 14-1108, 14-1109, and 14-1110, R. S. Supp., 1959.

We think the language of sections 1, 2, and 3 of the act grants this authority to the district and city. But if there is any question in this regard we think, in view of the record before us, that the following principles, applied thereto, would make that fact abundantly clear.

"In case of doubt as to the meaning of a statute, resort may be had to the title as an aid to discover the legislative intent, but by no means to enlarge the scope of the statute so as to include a subject not fairly expressed in the body of the act." Omaha Nat. Bank v. Jensen, 157 Neb. 22, 58 N. W. 2d 582. See, also, McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599; Nebraska Central Bldg. & Loan Assn. v. Yellowstone, Inc., 141 Neb. 679, 4 N. W. 2d 762; Hansen v. Dakota County, 135 Neb. 582, 283 N. W. 217; State ex rel. Marrow v. City of Lincoln, 101 Neb. 57, 162 N. W. 138. As stated in Hansen v. Dakota County, *supra:* "Assuming, for the sake of argument, that the language used in section 7, when considered with other language in the act, results in ambiguity and uncertainty and casts doubt as to what the legislature intended, we may then resort to an examination of the title to the act as an aid to construction."

"If words of a statute are of doubtful meaning, they will be interpreted in a manner which will best effect the purposes of the enactment in preference to one which will defeat it. The intention of the Legislature when ascertained will prevail over the literal sense of the words used and this is especially true when the strict letter of the law would lead to injustice or absurdity. In interpreting a statute the legislative intent may be found from the reason of the enactment." Hal-

stead v. Rozmiarek, 167 Neb. 652, 94 N. W. 2d 37. See, also, Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N. W. 2d 119; Starman v. Shirley, *supra;* Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359; McConnell v. McCook Nat. Bank, *supra;* Federal Farm Mtg. Corp. v. Adams, 142 Neb. 202, 5 N. W. 2d 384.

A public sewer system is a public utility the same as a water system, and the Legislature would have the right to delegate to a municipal corporation, here the city and the district, the authority to manage and operate the same or any phase thereof. See, Michelson v. City of Grand Island, *supra;* Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P. 2d 877. But in this respect L. B. 295 is not an original and independent piece of legislation, complete in itself so far as it applies to the subject matter properly embraced within its title. See, Stewart v. Barton, 91 Neb. 96, 135 N. W. 381; Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289. It is legislation which either adds to or takes from the district or the city the right already delegated to it by the Legislature to manage and operate, respectively, the water and sewer systems of Omaha and the surrounding area.

We think the trial court was correct when it held: "Metropolitan Utilities District has been empowered by Chapter 32, Nebraska Session Laws of 1959, approved June 9, 1959, with emergency clause, referred to herein as L. B. 295, to contract with the (city) of Omaha for the collection of sewer use fees which such city may lawfully be entitled to charge and collect." In other words, it gives the district the authority to enter into a contract with the city to use the facilities and services of the water utility, which it (the district) manages and operates, to collect all or any part of a service use or rental fee which the city may lawfully be entitled to charge and collect. Such authority is, however, not mandatory.

The next question to arise is, did the 1959 Legislature, by using the language that it did in amending sections

14-365.03 and 14-365.10, R. R. S. 1943, create a class of sewer users in metropolitan cities, other than those in cities and villages generally, without a proper base therefor such that it creates special class legislation which is prohibited by Article III, section 18, of the Constitution of Nebraska? The trial court held that it did. Its holding in this effect is apparently based on the thought that under sections 18-503, R. R. S. 1943, and 18-509, R. S. Supp., 1959, sewer users who do not own the premises served and who have not requested the service being used are not liable for the use thereof, whereas, sections 14-365.03 and 14-365.10, R. S. Supp., 1959, would subject all sewer users in metropolitan cities to such liability.

The operation of a sewer system, which includes the collection of a fee or service charge for the use thereof, is a matter of state-wide concern and, since the Legislature has entered the field, any attempt of a city to deal therewith contrary to the statutes covering the subject would be without force and effect. See, Michelson v. City of Grand Island, *supra;* Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 77 N. W. 2d 862; Nagle v. City of Grand Island, 144 Neb. 67, 12 N. W. 2d 540; Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894.

However the Legislature can, in dealing with a matter of state-wide concern, make classification of those subject thereto if a proper basis exists for so doing. See, Omaha Parking Authority v. City of Omaha, *supra;* United Community Services v. The Omaha Nat. Bank, *supra;* Dorrance v. County of Douglas, *supra;* Axberg v. City of Lincoln, *supra;* Galloway v. Wolfe, 117 Neb. 824, 223 N. W. 1, 62 A. L. R. 637; State ex rel. Douglas County v. Frank, 61 Neb. 679, 85 N. W. 956; State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941; State ex rel. Jones v. Graham, 16 Neb. 74, 19 N. W. 470. As we held in Cunningham v. Douglas County, 104 Neb. 405, 177 N. W. 742, by quoting from Allan v. Kennard,

81 Neb. 289, 116 N. W. 63: " 'The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by an artificial and baseless classification attempted to avoid and violate the provisions of the Constitution prohibiting local and special legislation.' "

The question then arises, did the Legislature classify the users of the sewer system in a metropolitan city on a different basis than those in other cities and villages in the state? If it did not classify them differently then there is no necessity for our determining whether or not a proper basis exists for its doing so.

Originally the Legislature dealt with this subject in 1933 when it passed S. F. No. 384. See Laws 1933, c. 146, p. 561, which is now Chapter 18, article 5, R. R. S. 1943. Section 18-503, R. R. S. 1943, thereof provides: "The governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control thereof. The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system by each person, firm or corporation whose premises are served thereby. If the service charge so established is not paid when due, such sum may be recovered by the municipality in an action of assumpsit, or it may be certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes are certified, assessed, collected and returned."

Section 18-509 was enacted by the 1951 and amended by the 1957 session of the Legislature and is now reported as section 18-509, R. S. Supp., 1959. It provides, insofar as here material, as follows: "The mayor and city council of any city or the board of trustees of any village, in addition to other sources of revenue available to the city or village, may by ordinance set up a rental or use charge, to be collected from users

of any system of sewerage, and provide methods for collection thereof. The charges shall be charged to each property served by the sewerage system, shall be a lien upon the property served, and may be collected either from the owner or the person, firm, or corporation requesting the service."

Insofar as cities of the metropolitan class are concerned the Legislature passed a law in 1953 relating thereto. See Laws 1953, c. 24, p. 98. It has become a part of article 3 of Chapter 14, R. R. S. 1943. The 1959 Legislature amended sections 14-365.03 and 14-365.10 thereof. See Laws 1959, c. 32, p. 186. These sections, as amended, are now sections 14-365.03 and 14-365.10, R. S. Supp., 1959.

Section 14-365.03, as amended by the 1959 Legislature, now reads as follows: "The governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control thereof. The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system, including any storm sewer system, by the owner of the property served or by the person, firm, or corporation using the services. If the service charge so established is not paid when due, such sum may be recovered by the municipality in an action of assumpsit, or it may be certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes are certified, assessed, collected, and returned."

Section 14-365.10, as amended by the 1959 Legislature, now reads, insofar as here material, as follows: "The mayor and city council of any metropolitan city, in addition to other sources of revenue available to the city, may by ordinance set up a rental or use charge to be collected from users of any system of sewerage, including any storm sewer system, and provide methods of collection thereof. The charges shall be charged to

each property served by the sewerage system, including any storm sewer system, shall be a lien upon the property served, and may be collected either from the owner or the person, firm, or corporation using the service."

Section 18-503, R. R. S. 1943, and section 18-509, R. S. Supp., 1959, permit the governing body of any city or village in the state to establish just and equitable rates or charges, also referred to as rental or use charges, to be paid for the use of any sewer system which it is lawfully operating and that such rental or use charges are to be charged to the premises served thereby but may be collected from either the owner of the premises served or from the person, firm, or corporation "requesting the service."

Sections 14-365.03 and 14-365.10, R. S. Supp., 1959, permit the governing body of any metropolitan city in the state to establish just and equitable rates or charges, also referred to as rental or use charges, to be paid to it for the use of its sewer system and that such rental or use charges are to be charged to each property served but may be collected from either the owner thereof or from the person, firm, or corporation "using the service."

The primary purpose of these statutes is to authorize the governing body of any city or village in the state to make and collect a reasonable rental fee or service charge for the use of any sewer system which it is operating. In each case the statute provides such rental fee or service charge may be charged to the premises served but collected from either the owner or the person, firm, or corporation "requesting the service" or "using the service." We do not think the use of the two words "requesting" and "using" created two distinct classes from whom collection for the use of the sewer may be made. We think "using the service" implies a request was made for that purpose, whereas "requesting the service" implies that it is done for the

purpose of making use thereof. We find that for all practical purposes the two phrases "requesting the service" and "using the service" mean the same thing and should be so construed. In view thereof we find the trial court was in error.

A further question arises, did the Legislature have the right to delegate to the district the authority to cut off the water service of its patrons who fail to pay the sewer service fee or use charge imposed upon them by the city if the district enters into an agreement with the city under and pursuant to ordinance No. 21141. Ordinance No. 21141 was passed by the city under and pursuant to L. B. 295. Section 2 of L. B. 295, hereinbefore set forth, provides in part: "* * * and such district may discontinue water service to its customers, for failure to pay such sewer rental or use fee." In Michelson v. City of Grand Island, *supra,* we held: "The provision of a city ordinance for shutting off water furnished by the city to the premises of the consumer failing to pay sewer service charges is not unconstitutional as depriving persons of property without due process of law, as where water and sewer services are so interlocked neither can be effective without the other.

"A regulation promulgated by municipal ordinance which provides that the water supply be shut off to residents delinquent in the payment of sewer charges is valid and not an unreasonable or arbitrary regulation, * * *."

We see no good reason why the Legislature, under its plenary powers to regulate and control municipal corporations, could not grant the same authority to municipal corporations that have been given the authority to manage and operate such utilities. We think it can. This case is clearly distinguishable from Garner v. City of Aurora, 149 Neb. 295, 30 N. W. 2d 917, which involved the collection and disposal of garbage, under the principle therein announced as follows: "A public service corporation cannot refuse to furnish its public service

because the patron is in arrears with it on account of some collateral or independent transaction, not strictly connected with the particular physical service."

Having come to the conclusion that L. B. 295 is constitutional, that ordinance No. 21141, passed by the city under and pursuant thereto, is valid, and that the district and city could lawfully enter into a contract whereby the district could agree to use the facilities and services of its water department to collect and remit the sewer service fee or rental use lawfully imposed by the city, the question arises, was it entered into on a proper basis?

Section 2 of L. B. 295, provides the city is empowered to pay the district "the charges for such services as set forth in said contract" which is referred to in the title of the act as "the cost thereof." However, section 14-1041, R. R. S. 1943, insofar as here material, provides: "A metropolitan water or metropolitan utilities district shall keep all funds, accounts and obligations relating to any one utility under its management separate and independent from the funds and accounts of each other utility under its management. The cost of any consolidated operation shall be allocated to the various utilities upon some reasonable basis determined by its board of directors."

Section 14-1041, R. R. S. 1943, does not provide any particular formula which the district must use for the purpose of allocating the costs. "Reasonable basis," as therein used, means a basis that is appropriate to the purpose for which it is being used, that is, that the customers of one utility do not unreasonably bear the costs which should properly be chargeable to the customers of another. It would appear there are several formulas, under approved accounting methods, by which the board of directors of the district could determine the cost of such consolidated operation upon a reasonable basis, that is, to determine the cost to the district for the use of the facilities and services of its water utility to

collect the sewer use or rental fee lawfully imposed by the city upon the users of its sewer system. However, it should be remembered it is not for the city or the courts to determine what that formula is to be, but it is a matter for the board of directors of the district to decide subject, however, to the courts' right to review such decision to determine if it was made upon some reasonable basis.

It had been costing the city about $101,500 per annum to collect its sewer use or rental fee. The method used by the board of directors of the district, in order to determine what they were going to charge for this service, was to take a figure of $40,500 as the actual or "out-of-pocket" cost of performing the service and then adding thereto half of what it thought that figure would save the city, thus dividing what are referred to as "net savings" to the city from the operation equally between the district and the city. By doing so a figure of $70,500, or $8\frac{1}{3}$ cents per customer per month, was arrived at. That is the contract basis upon which the district agreed to perform the service, for the contract provides the "City will reimburse District at the rate of $8\frac{1}{3}$ cents per sewer use fee bill rendered." With few exceptions, all billings are to be on a monthly basis. We cannot see where such a basis for determining the cost of the operation is a reasonable one for the amount which the city would save by reason of the district performing these services has nothing to do with the cost thereof to the district. We do not think the district had authority to enter into a contract with the city to perform the services on that basis. We think the trial court was correct when it held the contract between the district and the city was not made in conformity with the provisions of section 14-1041, R. R. S. 1943, applicable thereto and, in view thereof, to be inoperative and without force and effect for it was not made within the scope of the district's authority. In order to be operative a contract entered into under and

pursuant to the authority granted the district and the city by L. B. 295, the requirements of section 14-1041, R. R. S. 1943, that the cost of such operation must be allocated by the board of directors of the district upon some reasonable basis, must be complied with.

The trial court directed that each of the parties to the action should pay its own costs in that court. Under section 25-1933, R. R. S. 1943, this court is authorized to direct each party to pay his own costs or apportion the costs among the parties. Considering the history of the negotiations between the district and city leading up to the contract, including the history leading up to the enactment of L. B. 295, and the purpose for which this suit was brought, we think the same order, with one exception, should be entered by this court. We, therefore, direct that each of the parties to the action shall pay its own costs in this court except that the cost of the bill of exceptions shall be taxed equally between them.

We remand this cause to the district court to render a judgment in accordance with our holdings herein.

AFFIRMED AS MODIFIED.

ELLWOOD B. CHAPPELL and PAUL E. BOSLAUGH, JJ., not participating.