REQUESTED BY: Senator Jerome Warner Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Warner:
You have asked whether the committee amendment to LB 556 is constitutional. It provides that special abortion coverage `shall' be offered to a state employee covered under a group health insurance program pursuant to §§ 44-1620
to 44-1632, with the cost of such abortion coverage to be borne solely by such employee. As discussed below, we have concluded this raises no constitutional problem not already present in the intent of the Legislature expressed in Laws 1980, LB 1004, section 22. (We could not assure you in Attorney General's Opinion No. 282 (April 17, 1980) that that provision was constitutional, but said it probably was.)
Abortion is a legitimate medical procedure. It would be covered by any group health policy for state employees covering medical procedures if not otherwise exempted.See, Roe v. Wade, 410 U.S. 113 (1973), Neb.Rev.Stat. § 44-1615, 44-1620, 44-1623 (Reissue 1978). It is not a `special benefit' which `may' be provided under Neb.Rev.Stat. § 44-1625
and 44-1626 (Reissue 1978) at the expense of the employee.
Consistent with the intent of the Legislature expressed in Laws 1980, LB 1004, section 22, the amendment to LB 556 would put abortions in a less-favored position than other medical procedures because the state would not be paying any part of the premium for the abortion coverage. To be constitutional such a classification must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in different classes as to disclose the necessity or propriety of different legislation in respect to them. See, Galloway v. Wolfe,117 Neb. 824, 826 (1929).
The Court in Maher v. Roe, 432 U.S. 464 (1977), andHarris v. McRae, 448 U.S. ___ (1980), recognized the right of the state to favor childbirth over abortions by funding childbirth but not funding abortions. However, we are not aware of any comparable support favoring medical procedures other than childbirth over abortion unless it is the fact that the Court in Planned Parenthood of Central Missouri v.Danforth, 428 U.S. 52 (1976), upheld the requirement for written consent from one seeking an abortion even though it did not characterize prior written consent to surgery as the universal practice of the medical profession.
You have also asked if that amendment would keep the state from entering into a contract with an insurance carrier for group health insurance for state employees if the insurance carrier does not or will not offer the special insurance coverage prescribed by this amendment. As discussed below, we have concluded that it will only if such coverage is not provided by another carrier.
Under Neb.Rev.Stat. § 44-1622 (Reissue 1978), the Department of Insurance shall select one or more carriers of insurance to serve as administrator of the insurance contract or contracts. Neb.Rev.Stat. § 44-1623 (Reissue 1978) makes provision for a contract for life insurance and a
contract for group health insurance to be financed by the state to the extent that appropriations made for that purpose are available and, if necessary, by contributions from each employee. However, under Neb.Rev.Stat. § 44-1625 (Reissue 1978) the group health insurance contract or contracts
may permit the extension of special benefits.
Under the amendment to LB 556 it will be the state which will have the duty to make abortion coverage available to all state employees who choose it. Thus, if the state can find a carrier to provide this coverage, then it can contract for other group health insurance benefits with carriers who do not or will not offer abortion coverage.
Sincerely yours, PAUL L. DOUGLAS Attorney General Marilyn B. Hutchinson Assistant Attorney General